313 So.2d 184

**Jack PRICE and Samuel Price**

**v.**

**SOUTH CENTRAL BELL, a Corp.**

**SC 918.**

Supreme Court of Alabama.

May 1, 1975.

Rehearing Denied May 29, 1975.

Hamilton, Butler, Riddick & Latour, and James W. Tarlton, III, Mobile, for appellants.

Atley A. Kitchings, Jr., and J. Richard Teel, Birmingham, and Thomas A. Johnston, III, Mobile, for appellee.

BLOODWORTH, Justice.

This is an appeal from a final judgment of the Circuit Court of Mobile County, which dismissed the complaint of the plaintiffs in a nonjury case after a hearing on the merits.

The plaintiffs, Jack and Samuel Price, seek to enjoin South Central Bell Telephone Company from changing the telephone number at their place of business, the Town House Motor Hotel in Mobile, and to recover punitive damages on the grounds that the threatened change constitutes an unlawful interference with the Prices' business and illegal coercion to force them to pay the debt of another. In its answer, the telephone company alleges that its actions were warranted under the applicable tariffs approved by the Alabama Public Service Commission. After a trial on the merits, the trial judge, concluding that plaintiffs Price were not entitled to any relief, dismissed the complaint with prejudice. We reverse and remand.

The Town House Motor Hotel was previously operated by American Hotel Operators Corporation. When the record owner, the 1061 Corporation, defaulted on one of the mortgages on the property, the

Price brothers, who were personal guarantors on a junior mortgage, purchased the hotel building at a foreclosure sale. The Prices then began operation of a hotel in the building on April 3, 1974, under the same name (Town House Motor Hotel) as used by the prior owner. (Mandarin Management, Inc., the Prices' family corporation, actually runs the hotel under a lease agreement with the Prices.)

Jack Price acting for Mandarin Management, Inc. applied to the telephone company for continuation of telephone service under the hotel's existing number, 438–4653. In lieu of a deposit, the telephone company accepted Price's personal guarantee of all charges incurred after April 3, 1974. In a letter tendered to the telephone company by Price, the prior owner consented to the continued use of the old number by the hotel.

Shortly thereafter, Price was told by telephone company officials that the hotel could not continue to use the old number and that no referral service would be provided unless the prior owner's past-due bill of $3,162.99 was paid in full. Two telephone company officers testified that their actions were justifiable under the applicable operating tariffs and that their sole consideration in the matter was the unpaid bill.

It is undisputed that the Prices have no connection with the prior owner or operator of the hotel, business or otherwise. There was also undisputed testimony: that the continued use of a business telephone number is valuable, particularly to a hotel whose number is listed in travel guides and with travel agencies; that ninety percent of this hotel's business comes from repeat telephone reservations; and that the hotel's business will be damaged to a significant but indeterminable degree by a change of number.

"Service regulations" are tariffs drafted by the regulated company and submitted to the Alabama Public Service Commission. If no objections are made to a proposed tariff within 30 days from submission, it becomes law and is considered part of the service contract between the telephone company and the subscriber. Tit. 48, § 53, Code of Alabama 1940 (Recompiled 1958).

The tariffs ("service regulations") applicable to the instant case are as follows:

"A2. GENERAL REGULATIONS

"A2.3 Establishment and Furnishing of Service (Cont'd)

"A2.3.6 Transfer of Service between Subscribers

"a. *Service previously furnished one subscriber may be assumed by a new subscriber* upon due notice of cancellation, or *in case of abandonment, provided there is no lapse in the rendition of service.* Such transfers are subject to service connection charge regulations and may be arranged for in either of two ways:

"(1) If the new subscriber, fully understanding the regulations governing the service and the status of the account, willingly assumes all obligations thereunder. Future bills are then rendered to him without an adjustment to or from any particular date, with the Company arranging for the requested change in billing and directory listing.

"(2) If the new subscriber does not wish to assume payment of the old account a new service application is taken and an adjustment in billing is made to and from the date the transfer is effective.

"b. *Under either method of transfer the reassignment of the old telephone number* to the service of the new party *is arranged for only after the former subscriber has given his consent to its* use, and then only *when, in the judg-*

ment of the Company, there exists no relationship, business or otherwise, between the old and new subscribers, and when in the judgment of the Company a change in the telephone number is not required.

"c. When a relationship does exist, business or otherwise, between the old and new subscribers, the reassignment of the old telephone number will not be permitted unless all charges due under the current account have been paid, and then only when in the judgment of the Company a change in the telephone number is not required."

\*    \*    \*    \*    \*    \*

"A2.3.11   Provision and Ownership of Telephone Numbers

"Telephone numbers are the property of the Company and are assigned to the service furnished the subscriber. The subscriber has no property right to the telephone number or any other call number designation associated with services furnished by the Company, and no right to the continuance of service through any particular central office. The Company reserves the right to change such numbers, or the central office designation associated with such numbers, or both, assigned to the subscriber, whenever the Company deems it necessary to do so in the conduct of its business."

(Emphasis supplied.)

The Prices do not question the validity or reasonableness of the tariffs, but claim the telephone company has acted arbitrarily and not in compliance with the tariffs by threatening a change in the number unless the old subscriber's bill is paid.

When a new subscriber desires to continue to use the old subscriber's number, but will not pay the old subscriber's bill, the

following must occur, under tariff A2.3.6, for the new subscriber to be able to do so:

1.  no lapse in rendition of service;

2.  consent of old subscriber;

3.  in the judgment of the Company there exists no relationship, business or otherwise, between old and new subscriber;

4.  in the judgment of the Company a change in number is not required.

It is undisputed that there has been compliance with the first two requisites. As to the fourth requisite, the telephone company offers no reason why a change in number is required except that the Prices refuse to pay the prior owner's telephone bill.

Thus, the controlling question on this appeal is whether there exists a "relationship, business or otherwise" between the Prices and the former subscriber.

At trial two telephone company officials testified that their sole consideration in determining to change a number is whether the new subscriber will pay the old subscriber's bill. According to the two officials' testimony they did not, in this instance, make a determination as to whether there exists a "relationship, business or otherwise," between the old and the new subscriber. If the new subscriber refuses to pay the bill, the Company considers the matter is at an end, the number is changed, and no referral service is provided.

On this appeal, the telephone company contends its conduct is justified because there is a relationship, business or otherwise, between the Prices and the former owner in that both operate the same type of business (hotel) at the same location and under the same name (Town House Motor Hotel).

■   The appellants-Price contend that the telephone company's interpretation of the tariff is erroneous. They argue that

the relationship between the old and new subscribers must be such that, in reality, there has been no real change in the identity of the subscribers but a change in name only. We agree with appellants-Price. In the present context, the word "relationship" infers the existence of a connection or association between the old and new subscribers—business or "otherwise." Mere similarity or identity in the type of business operated by the old and new subscribers is not within the contemplation of the tariff.

As we have already mentioned, the telephone company's officers testified that their sole consideration in determining to change the number and in not providing referral service was the refusal to pay the old subscriber's bill. The question of "relationship, business or otherwise" did not enter into their decision.

■ It is our judgment that the telephone company's actions fall within the ambit of the rule that a public utility has no right to cut off or refuse service to a customer in order to compel that customer to pay the bill of a former subscriber, which it is not the duty of the customer to pay. Alabama Water Co. v. Knowles, 220 Ala. 61, 124 So. 96 (1929); 64 Am.Jur.2d, Public Utilities, § 67; See cases collected in Annot. 19 A.L.R.3rd 1227.

■ As another justification for its actions, the telephone company refers us to tariff A2.3.11 by which it reserves all property rights to its numbers and the right to change numbers. We would agree that a customer has no property right, as such, in a number and that the telephone company may change its numbers whenever, in *good faith*, it considers that this is necessary.

■ However, the Tenth Circuit Court of Appeals held, in construing a telephone tariff very similar to A2.3.11, viz.:

"* * * The tariff provision negatives any claim of a customer to a property right in a telephone number but *cannot be construed* to authorize the telephone company to exercise *arbitrary dominion* over the number so as to cause harm and injury to another." (Emphasis supplied.) Shehi v. Southwestern Bell Telephone Co., 382 F.2d 627 (1967).

Although *Shehi*, supra, is factually distinguishable from the instant case, we believe the general principle of law enunciated therein is applicable here. The telephone company's actions are clearly arbitrary and contrary to tariff A2.3.6. The Prices will suffer injury from the change. If we followed the telephone company's interpretation of tariff A2.3.11, tariff A2.3.6 would be rendered meaningless and changes in subscribers' numbers could be made at the slightest whim of the company, regardless of the consequences to subscribers.

In its final judgment, the trial court found *inter alia*: ·

"5. That in this case the Company properly exercised its discretion under the applicable tariffs."

■ We recognize our oft stated rule of review that, when the trial judge hears the evidence ore tenus, his findings have the effect of a jury verdict and will not be disturbed on appeal unless plainly and palpably erroneous. Chrisman v. Brooks, 291 Ala. 237, 279 So.2d 500 (1973); See cases collected at 2A Alabama Digest Appeal and Error, ☞ No. 1008.1. However, such rule is without application when the trial court erroneously applies the law to the facts before it. Messer v. Messer, 280 Ala. 395, 194 So.2d 552 (1967).

■ We hold that the trial court erred in finding that the telephone company properly exercised the discretion vested in it under the tariffs. The trial court's finding obviously results from an error of law—a construction of the applicable tariffs which places an unlimited discretion in the telephone company to deal with its tele-

phone numbers as it pleases and to change a new subscriber's number solely because a new subscriber refuses to pay an old subscriber's past-due bill.

At the trial, the telephone company moved to dismiss the suit against it on the ground that the action is not prosecuted in the name of the real party in interest. The basis for this motion is that the telephone service in issue is listed in the name of the Prices' family corporation, Mandarin Management, Inc., and not in the name of the Prices individually. The trial court denied the motion.

The telephone company now contends, on this appeal by the Prices, that even though we find the trial judge's findings were erroneous, on the merits, he reached the right result because the action should have been dismissed for failure to prosecute the suit in the name of the real party in interest. Rule 17(a), A.R.C.P. Therefore, it argues, the judgment of dismissal should be affirmed. We disagree.

■ The ruling of the trial court on appellee-telephone company's motion was adverse to it. If an appellee wishes to have rulings of the trial court adverse to it reviewed, an appellee must either take a cross-appeal or cross-assign errors upon the record brought up by the appellant. Tit. 7, § 746, Code of Alabama 1940 (Recompiled 1958); Rule 3, Revised Rules of the Supreme Court of Alabama; See also cases collected in 2A Alabama Digest, Appeal and Error, ☜ No. 747(2).

■ Since the matter is not raised nor the issue presented to us, we will neither consider nor express any opinion upon the correctness of the trial court's ruling on the Rule 17 motion.

The telephone company cites Valley Heating, Cooling & Electric Co. v. Alabama Gas Corp., 286 Ala. 79, 237 So.2d 470 (1970), as authority for the proposition that the power to grant or refuse an injunction is discretionary.

In cases seeking an award of punitive damages, it also argues, such an award is also discretionary with the trier of the fact, citing Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484 (1970).

Appellee-telephone company contends that these rules require affirmance because appellants have not shown that the trial judge abused his discretion in denying an injunction and punitive damages. We cannot agree with appellee.

■ An injunction and punitive damages are but forms of relief which a court has the power to grant. Under present practice, every final judgment (except a default judgment) should "grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Rule 54(c), A.R.C.P.

In the instant case it seems apparent that the trial judge did not dismiss the action because he considered injunctive and punitive relief to be inappropriate. Rather, it seems clear that he concluded appellants, as a matter of law, had *no right to any relief*. Such conclusion was erroneous.

■ Thus, we hold that, on the facts presented at trial, the trial court erred in dismissing the complaint and denying the appellants-Price *any relief*. It would not be appropriate on this appeal to speculate as to the form of relief to which the appellants Price may ultimately be entitled on remand as such rests peculiarly in the province of the trier of fact.

Accordingly, the cause is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

FAULKNER, ALMON and EMBRY, JJ., concur.

HEFLIN, C. J., concurs in the result.