This is a class action in which the plaintiff class alleges that the defendants, Global Tel*Link Corporation ("Global"); Secur-Comm Corporation; Schlumberger Technology, Inc., ("Schlumberger"); and Talton Telecommunication Corporation ("Talton"), imposed time limitations on collect calls that originated from coin-operated telephones that it serviced in correctional institutions and that those limitations resulted in multiple connection fees, and that the conduct was not authorized by any tariff or other regulation of the Alabama Public Service Commission ("APSC"). The issues presented are whether the circuit court should have dismissed the action on the basis that the APSC has exclusive jurisdiction over the matters complained of; and/or whether the circuit court should have dismissed the defendants on the basis that the plaintiffs did not exhaust their administrative remedies before the APSC prior to seeking judicial review of these matters.
The defendants provide telephone service for customer-owned, coin-operated telephones for use by inmates in correctional facilities. The inmates can make only collect telephone calls, because pay telephones with change boxes are not allowed in the correctional facilities. The plaintiffs have received collect telephone calls from inmates in a correctional facility serviced by the defendants. It is not disputed that the defendants had a practice and policy of imposing a time limitation on toll calls originating from correctional facilities. The collect call would end after the allotted 15 minutes, and if the caller wanted to talk longer, the caller was required *Page 916 
to place another collect call. Because a connection fee was imposed at the commencement of each call, the plaintiffs allege that they suffered a substantial increase in their total telephone bills. The plaintiffs argue that this practice was conducted by the defendants for a considerable period of time before March 1993 and that during that period the time limitation on collect calls was not authorized by any tariff or other regulation.
On March 8, 1993, after an investigation, the APSC issued an order prohibiting the defendants from imposing a 15-minute time limit on toll calls originating from correctional institutions, until the defendants had filed a tariff provision authorizing the limitation and the APSC had approved the provision. On May 7, 1993, after considering a petition for reconsideration filed by Talton, the APSC agreed to stay its order pending a rehearing and reconsideration. After holding another hearing on the issue of time limits on October 14, 1993, the APSC issued an order on December 6, 1993, authorizing the defendants "to terminate calls from correctional facilities when such termination is required by the correctional facility administrators and provided the Commission is notified in writing of the time limitations imposed by each confinement facility served." In re: Generic Proceeding to DetermineWhether Certain Amendments to the Commission's Rules,Regulations and Guidelines Governing the Provision ofCustomer-Owned, Coin-Operated Telephone Service in CorrectionalFacilities Should be Adopted, No. 23185, at 14 (Dec. 6, 1993).
On August 10, 1993, while the matter was pending before the APSC, the plaintiffs filed their original complaint in the Circuit Court of Bullock County against Talton and Secur-Comm. On April 26, 1994, the plaintiffs amended the complaint to add Global and Schlumberger as defendants. In their complaint, the plaintiffs sought monetary compensation, an injunction prohibiting the defendants from imposing time limits on future calls, and a declaratory judgment concerning the lawfulness of these time limits. The defendants filed a motion to dismiss the claim for lack of subject matter jurisdiction and for failure to exhaust administrative remedies. The circuit court denied the defendants' motion to dismiss. This Court, pursuant to Rule 5, Ala.R.App.P., gave permission for the defendants to appeal that denial.
The defendants argue that the circuit court erred as a matter of law by denying their motions to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction, because, they argue, the APSC has exclusive jurisdiction over rates and service regulations of telephone companies. We agree.
The Alabama Legislature has delegated exclusive jurisdiction to the APSC over telephone "rates and service regulations." § 37-1-31, Ala. Code 1975. That section provides:
 "The rights, powers, authority, jurisdiction and duties of this title conferred upon the commission shall be exclusive and, in respect of rates and service regulations and equipment, shall be exercised notwithstanding any rights heretofore acquired by the public under any franchise, contract or agreement between any utility and municipality, county or municipal subdivision of the state, and shall be exercised, so far as they may be exercised consistently with the Constitution of the state and of the United States, notwithstanding any right heretofore so acquired by any such utility."
The plaintiffs' claim is based on the asserted absence of any tariff or other regulation permitting time limits and the plaintiffs' assertion that the practice caused them to incur substantially higher telephone bills. The claim thus involves telephone "rates and service regulations" and falls squarely within the scope of the APSC's exclusive jurisdiction.
The breadth of the exclusive jurisdiction doctrine is illustrated in Taffet v. Southern Co., 967 F.2d 1483 (11th Cir.) (en banc), cert. denied, 506 U.S. 1021, 113 S.Ct. 657,121 L.Ed.2d 583 (1992), a case involving a question of the jurisdiction of the APSC. In Taffet, the Eleventh Circuit Court of Appeals unanimously affirmed the decisions of two district courts that had dismissed damage claims based upon allegations that the utility had fraudulently accounted for spare parts held in inventory and had thereby improperly *Page 917 
affected charges to subscribers. The Taffet court held, with respect to the appeal from the District Court for the Middle District of Alabama:
 "In Alabama the Legislature has delegated the responsibility for the determination of utility rates and of what constitutes a fair rate of return to the Alabama PSC."
967 F.2d at 1490. The court further recognized that the exclusive jurisdiction of the APSC applied where there were allegations of fraud or misconduct in the regulatory process:
 "Allowing consumers of the utilities' service to recover damages for 'fraudulent' rates or otherwise 'erroneous' rates would disrupt greatly the state's regulatory schemes and, in the end, would cost consumers dearly."
967 F.2d at 1491.
There is no dispute between the parties that the issue central to this case is the absence of a tariff during the period of time at issue. The plaintiffs do not question the authority of the APSC to establish rates, and raise no issue about the proper method for determining rates. The plaintiffs contend that they are asking for declaratory and injunctive relief because of damage they say they incurred for charges not authorized by any service regulation filed with the APSC. Based on that assertion, the plaintiffs argue that this is not a "rate case." Thus, the plaintiffs argue that Taffet and other cases addressing the APSC's exclusive jurisdiction over rates is not applicable. We find no merit in the plaintiffs' argument that the APSC does not have exclusive jurisdiction of the matters raised in their complaint because their claims merely involve the failure of the defendants to file a tariff provision with the APSC expressly allowing time limits on collect calls and that the nature of their argument makes this not a "rate" case. Section 37-1-31, Ala. Code 1975, clearly gives the APSC exclusive jurisdiction over "rates and service regulations."
The question whether time limits on calls must be specifically included in tariffs involves "service regulations," within the meaning of § 37-1-31. Section37-4-1(9) deals with public utilities other than transportation companies, and it defines "service regulations" as "mean[ing] and includ[ing] every rule, regulation, practice, act or requirement in any way relating to the service or facilities of a utility." Consistent with this definition of "service regulations," the APSC makes specific regulations concerning the obligation of telephone companies to file tariffs. Those regulations require that tariffs be prepared in accordance with the rules and regulations of the APSC. See Telephone Rules of'the Alabama Public Service Commission ("Telephone Rules"), Rule T012(A)(1). The fact that the tariff complained of by the plaintiffs is required to be filed with the APSC leads us to the ultimate conclusion that the APSC has exclusive jurisdiction over the absence of the filing of the tariff; and, we conclude, if the plaintiffs were aggrieved, they could have filed a complaint with the APSC.
This Court has written:
 "The fixing of a fair rate of return is exclusively within the jurisdiction of the legislature or its agency, the Public Service Commission. State v. Southern Bell Telephone and Telegraph Co., 274 Ala. 288, 148 So.2d 229 (1962). In that connection, we observed in Alabama Public Serv. Comm'n v. Southern, Bell T. T. Co., 268 Ala. 312, 106 So.2d 163 (1958) that:
 " 'An appropriate rate of return necessarily will vary, depending upon the particular condition and factors in each case. . . . However, we would emphasize that the responsibility for fixing rates and charges which are reasonable and just to both the utilities and the public rests with the Commission and not with the courts. So long as the Commission pursues its statutory authority, within constitutional limits, the courts should not interfere with its determinations.' "
Alabama Public Service Comm'n v. South Central Bell Tel. Co.,348 So.2d 443, 446 (Ala. 1977).
The plaintiffs primarily rely on Price v. South Central Bell,294 Ala. 144, 313 So.2d 184 (1975), and Nader v. AlleghenyAirlines, Inc., 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643
(1976), for their assertion that the APSC *Page 918 
does not have exclusive jurisdiction. In Price, the plaintiff hotel owners complained that South Central Bell had unlawfully interfered with their business by refusing to provide telephone service to the plaintiffs under an existing number used by prior owners of the hotel unless the plaintiffs paid the outstanding bills of the prior owners. In reversing the trial court's judgment in favor of the telephone company, this Court held that the applicable tariff expressly provided that the telephone company could refuse to provide service to the owner of a business under an existing number only if there was some business connection between the current owner of the business and the prior owner. Price, 294 Ala. at 148, 313 So.2d at 187. This Court noted that the plaintiffs did not question the validity or reasonableness of the tariff, but claimed that the telephone company had acted arbitrarily in regard to the tariff. 294 Ala. at 148, 313 So.2d at 187. There was no jurisdictional question presented, or addressed, in Price.
By contrast, the central issue raised by the plaintiffs' claims in this case is whether the APSC's rules and regulations permitted the defendants to impose time limits on calls in the absence of a tariff provision concerning time limits. Thus, the plaintiffs are questioning the validity of the defendants' tariffs, or the absence thereof, and the jurisdiction of the APSC to address this issue in light of its rules and regulations.
In Nader, an airline passenger asserted a claim of misrepresentation based on the airline's failure to disclose its deliberate overbooking practices. The United States Supreme Court rejected the defendant's contention that the Federal Aviation Authority ("FAA") had primary jurisdiction over the claim, because the claim, did "not turn on a determination of the reasonableness of a challenged practice" in light of matters within the Board's expertise. 426 U.S. at 305,96 S.Ct. at 1987. The Court did not question the FAA's jurisdiction, but, rather, held that "under the circumstances, the common-law [tort] action and the statute are not absolutely inconsistent and may co-exist." Id. at 300, 96 S.Ct. at 1985.
Nader involved the jurisdiction of the FAA, and the Supreme Court was interpreting a statute that did not contain the kind of exclusive language used in § 37-1-31, Ala. Code 1975. Consequently, we find Nader to be questionable authority concerning the statutory exclusive jurisdiction of the APSC established by the Alabama Legislature in § 37-1-31. Furthermore, the plaintiffs' claim in the case before us is not a common law tort claim, but a statutory claim for treble damages.
Based upon the foregoing, we hold that the APSC has exclusive jurisdiction over questions related to the absence of the filing of the tariff.
We now address the issue whether the plaintiffs were required to exhaust their remedies with the APSC before filing this action in the circuit court. The plaintiffs argue that there is no need for exhaustion of this matter with the APSC, because, they say, this case can be decided strictly on matters of law and is not dependent upon any administrative findings of fact. The plaintiffs contend that the Declaratory Judgments Act, § 6-6-220 et seq., Ala. Code 1975, provides a separate and distinct remedy apart from any substantive remedies. Thus, the plaintiffs argue that their claim falls within an exception to the exhaustion of remedies doctrine.
The plaintiffs failed to exhaust the statutory remedies available to them before the APSC, because, they allege, the utilities were engaged in impermissible practices concerning time limits. Because they failed to exhaust their remedies, they cannot sue to challenge the defendants' actions. Section37-1-32 gives the APSC general supervision over the "manner in which" the utility is operated, the utility's rates and operating methods, and the utility's compliance with Alabama law and orders of the APSC:
 "The Public Service Commission shall have general supervision of all persons, firms and corporations operating utilities mentioned in this title, shall inquire into the management of the business and shall keep itself informed as to the manner and method in which the business is conducted. *Page 919 
It shall examine such utilities as often as may be necessary to keep informed as to their general condition, their franchises, capitalization, rates and other charges, and the manner in which their plants, equipment and other property are owned, leased, controlled, managed, conducted and operated, not only with respect to adequacy, security and accommodation afforded by their service, but also with respect to their compliance with the provisions of this title, and any other law or laws, with the orders of the commission, and with the charter and franchise requirements."
Section 37-1-83 authorizes consumers to file a written complaint with the APSC concerning "any rate, service regulation, classification, practice or service in effect or proposed to be made effective" that "is in any respect unfair, unreasonable, unjust or inadequate, or unjustly discriminatory."
The Court held the following in regard to the doctrine of exhaustion of administrative remedies, in City of Huntsville v.Smartt, 409 So.2d 1353, 1357 (Ala. 1982):
 "Alabama has adopted the 'doctrine of exhaustion of administrative remedies.' This doctrine 'requires that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted.' Fraternal Order of Police, Strawberry Lodge v. Entrekin, 294 Ala. 201, 209, 314 So.2d 663, 670 (1975). Entrekin approved the 'exhaustion of administrative remedies' doctrine found in United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126
(1956), which applies 'where a claim is cognizable in the first instance by an administrative agency alone.' By that doctrine 'judicial interference is withheld until the administrative process has run its course. . . .' Entrekin, at 210, 314 So.2d 663."
In Hall v. City of Dothan, 539 So.2d 286
(Ala.Civ.App. 1988), the Court of Civil Appeals discussed the purpose of the requirement that public employees exhaust administrative remedies before obtaining judicial review:
 "The exhaustion doctrine allows an agency to fully develop technical issues and factual records within its particular area of expertise prior to judicial review. The agency can thereby have the first opportunity to correct any errors it may have made, and further judicial action may become unnecessary."
539 So.2d at 289.
The APSC has already established rules for tariff provisions on the same subject the plaintiffs are asking the circuit court to rule on, the permissibility of time limits on certain calls. The APSC issued an order concerning time limits on October 14, 1993, a month after the plaintiffs filed their complaint in the circuit court. As the defendants argue, pursuant to § 37-1-87, Ala. Code 1975, the plaintiffs could have intervened in the APSC's proceeding, to make there the same argument they have raised in this proceeding. In order for the plaintiffs to exhaust their administrative remedies, they are required by statute to become parties to a proceeding already before the APSC or to file a complaint and institute a proceeding before the APSC. Further, if the plaintiffs, as parties, are aggrieved by an APSC order, they have the right to seek a rehearing or to appeal the order within 30 days before the APSC order becomes final. Ala. Code 1975, § 37-1-105 and § 37-1-122.
The plaintiffs incorrectly rely on Alabama Cellular Service,Inc. v. Sizemore, 565 So.2d 199 (Ala. 1990), in support of their contention that they could file a separate and distinct action, a declaratory judgment action, and therefore need not exhaust administrative remedies. Alabama Cellular deals with the Administrative Procedure Act ("APA"), but the APSC is exempted from the APA by § 41-22-2(e), Ala. Code 1975, which provides:
 "All agencies whose rules or administrative decisions are subject to approval by the supreme court of Alabama and the department of insurance of the state of Alabama are exempted from the provisions of this chapter."
Thus, there is not a separate and distinct remedy provided for the plaintiffs, because the plaintiffs' claims fall within the exclusive jurisdiction of the APSC. *Page 920 
The legal relief the plaintiffs seek in the circuit court is available from the APSC. The plaintiffs' failure to exhaust the remedies available from the APSC prevents them from invoking the jurisdiction of the circuit court. Ex parte Graddick,495 So.2d 1367, 1370 (Ala. 1986).
Based on the foregoing, we conclude that the trial court erred by denying the defendants' motion to dismiss the action on the basis that the APSC has exclusive jurisdiction over the allegations asserted in the plaintiffs' complaint.
REVERSED AND REMANDED.
HOUSTON, J., concurs.
KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur in result.