ALMON, Justice.
Glen E. Holmes brought a class action against South Central Bell Telephone Company (“Bell”), alleging that Bell had committed fraud against, and breached its contracts with, him and other similarly situated individuals by failing to pay the proper compensation for telephone calls made from Bell’s public pay telephones. Holmes owns a business in which Bell has installed pay telephones. Bell moved to dismiss the action, contending that the claim was within the exclusive jurisdiction of the Alabama Public Service Commission (“APSC”) and that Holmes had failed to exhaust his administrative remedies. The trial court denied that motion. Bell later made a motion for summary judgment, which was also denied. This Court granted Bell’s petition for permission to appeal from that interlocutory order, pursuant to Rule 5(a), Ala.R.App.P.
Holmes purchased a business in which Bell had previously installed pay telephones. After the purchase, Holmes entered into a contract with Bell, by which Holmes agreed to allow Bell to maintain its telephones at his place of business. In the contract Holmes is considered a “location provider” for the telephones. Pursuant to the contract, Bell agreed to pay Holmes “remuneration based on 10% gross local and 10% intraLATA revenue and 3 cents per interLATA MOU.” MOU means “minutes of use.” A “LATA,” or “local access transport area,” is a subdivision of a state. An intraLATA call is a call within a LATA, commonly called a local call, and is carried by Bell because it is a local exchange carrier. An interLATA call is a call from one LATA to another, commonly called a long distance call. Because of the breakup of the AT & T monopoly in the early 1980’s, only “interexchange,” or long distance, carriers, such as AT & T or Sprint, may carry interLATA long distance calls. Therefore, the Bell/Holmes contract provided for Holmes to receive three cents for every minute of long distance calls made from the public telephones at his business.
*788 Holmes’s complaint alleged that Bell had failed to pay the remuneration due him under their contract by failing to pay him three cents per minute of use on certain inter-LATA (long distance) calls and that it had misrepresented facts material to the calculation of the remuneration that it agreed to pay under that contract.[1] Bell, in its brief to this Court, summarizes the dispute as follows: “In short, the question is whether [Bell] must pay remuneration to location providers for 950 or 1 + 800 calls that cross interLATA boundaries, even though the callers do not pay money to [Bell] for those calls.” Bell contends that the APSC has exclusive jurisdiction over Holmes’s claims, because, it maintains, this case concerns rates and service regulations that are solely within the province of the Commission. See § 37-1-31, Ala.Code 1975. Holmes maintains that the terms of the agreement that he alleges Bell has broken do not involve rates and service regulations. Rather, he says, the dispute concerns merely whether Bell has paid him what it owes him for his allowing Bell to maintain the telephones in his business, pursuant to their contract. The agreement to pay three cents per minute of inter-LATA use is merely a provision for Bell to pay “rent” to Holmes for keeping the telephones in his business, Holmes contends, and, he says, Bell has not paid the agreed upon “rent.”
The Alabama Legislature has charged the APSC with exclusive jurisdiction over the duties conferred on it by Title 37 of the Code. Section 37-1-31 provides:
“The rights, powers, authority, jurisdiction and duties by this title conferred upon the commission shall be exclusive and, in respect of rates and service regulations and equipment, shall be exercised notwithstanding any rights heretofore acquired by the public under any franchise, contract or agreement between any utility and municipality, county or municipal subdivision of the state, and shall be exercised, so far as they may be exercised consistently with the Constitution of the state and of the United States, notwithstanding any right heretofore so acquired by any such utility.”
These duties include general supervision, § 37-1-32, and fixing rates, § 37-1-80 et seq. The APSC regulates coin telephone service as a public utility service. See, e.g., Taiton Telecom. Corp. v. Coleman, 665 So.2d 914 (Ala.1995).
In Taitón, the Court held that claims presented in a class action involving coin-operated telephones for prison inmates were within the exclusive jurisdiction of the APSC. The issue was whether the defendant telephone company could place time limitations on collect telephone calls made from its coin-operated telephones in prisons. The telephone company had not filed with the APSC a tariff that included the time limitations. The Court, noting that the issue concerned whether the time limitations must be specifically included in those tariffs filed with the APSC, held that the issue involved “service regulations” within the meaning of § 37-1-31. The Court held:
“The fact that the tariff complained of by the plaintiffs is required to be filed with the APSC leads us to the ultimate conclusion that the APSC has exclusive jurisdiction over the absence of the filing of the tariff; and, we conclude, if the plaintiffs were aggrieved, they could have filed a complaint with the APSC.”
665 So.2d at 917.
Bell files tariffs that include provisions governing the placement of coin-operated telephones with location providers such as Holmes. Until 1984, these tariffs specified the compensation to be paid to location providers. In October 1984, Bell filed a tariff that allowed other companies to own and operate public telephones in Bell’s area of service and deleted the provision specifying the compensation it would pay to location *789 providers. Bell’s cover letter for that tariff revision stated:
“We plan to continue providing the current central office controlled public and semi-public coin telephone service. However, competition for space will dictate the need for more flexibility in compensating for this space. We are therefore proposing that the regulations concerning rate of commission and payment for space occupied be removed from the tariff.”
In spite of the removal from the tariff of any specification of the amount of compensation to be paid to location providers, the APSC still has jurisdiction over matters concerning the providing of coin telephone service by Bell. The contract itself between Holmes and Bell acknowledges the jurisdiction of the APSC:
“Location provider agrees that all charges and remuneration policies are subject to change as required by the applicable Public Service Commission or any other regulatory or judicial body with authority to mandate such changes, and that at no time shall any charge or remuneration policy differ from that allowed by any regulation or tariff of the applicable Public Service Commission or such other body, whether such regulation or tariff is currently in existence or is hereafter made known.”
In particular, whether Bell should compensate location providers for 950 calls and 1-800 calls placed from coin telephones is a matter affecting Bell’s rate of return and is therefore a proper subject for the APSC’s regulatory authority. Whether such calls come within the terms of the contract calling for Bell to pay “3c per Inter LATA [minute of use]” is a technical question within the authority and expertise of the APSC.
Carl Evans, the chief administrative law judge for the APSC, executed an affidavit in which he stated:
“Coin telephone operations in Alabama are subject to regulation by the Alabama Public Service Commission and those operations are in fact regulated by that Commission. It is clear that under the laws of this State, coin telephone service rendered by a public utility is a public utility service. As such, each aspect of that service comes within the exclusive jurisdiction of and is exclusively regulated by the Alabama Public Service Commission. The Public Service Commission tariff relating to coin telephone service operations in Alabama is attached hereto as Exhibit ‘A.’ That Alabama Public Service Commission tariff, and others like it, over the years have defined a public coin telephone as an exchange station installed for public use to ‘furnish service to the general public.’ The message charges for telephone calls from those public coin telephones are established and regulated by the Commission. The receipts from such telephone company coin operations become a part of the overall revenue of the Company, and the expenses incurred in the operation of those coin stations [become expense items] included in the cost of providing overall telephone service to the general public. Receipts and expenditures related to furnishing public utility service are historically within the jurisdiction of the Alabama Public Service Commission.
“The complaint procedures outlined in the Alabama statutes, and the Commission rules and regulations would be applicable to any complaint made to the Commission with respect to coin telephone service, rates and any related matter. This includes interpretation of the terms of a Public Telephone Service Agreement that defines expenses of remuneration to be paid by the telephone Company based on ’10% gross local and 10% intralata revenue and $.03 per interlata MOU.’ ”
The APSC is required to hear complaints “that any rate, service regulation, classification, practice or service in effect or proposed to be made effective is in any respect unfair, unreasonable, unjust or inadequate.” Ala. Code 1975, § 37-1-83. Because Holmes did not utilize the statutory complaint procedures, he failed to exhaust his administrative remedies, and a judgment should be entered for Bell. See Fraternal Order of Police v. Entrekin, 294 Ala. 201, 314 So.2d 663 (1975), and cases following that case.
*790 The matters stated in the complaint are within the exclusive jurisdiction of the Alabama Public Service Commission. Holmes failed to exhaust his administrative remedies before the Commission; the circuit court, therefore, erred in denying South Central Bell’s motion for summary judgment.
REVERSED AND REMANDED.
MADDOX, SHORES, HOUSTON, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and KENNEDY, J., dissent.

. The record indicates that, beginning in 1990, the Alabama attorney general conducted an investigation into Bell's paid commission practices involving public telephones. Specifically, the investigation examined the “failure or refusal of [Bell] to pay commissions due on interlata and intralata calls made from public telephones, con-traiy to the specific language of the contracts between [Bell] and the State of Alabama.” A class action was brought in the Macon County Circuit Court by both the State of Alabama and Holmes against Bell, but the State of Alabama later dismissed its claims. Holmes’s class action, the subject of this appeal, remained.