827 So.2d 73 (2002)
BIRMINGHAM HOCKEY CLUB, INC., d/b/a Birmingham Bulls
v.
NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC., et al.
1000658.
Supreme Court of Alabama.
February 15, 2002.
*75 James H. McFerrin of Southeastern Legal Group, L.L.C., Birmingham; and Ken Hooks and Ralph Bohannon of Pittman, Hooks, Dutton & Hollis, Birmingham, for appellant.
W. Percy Badham III of Maynard, Cooper & Gale, P.C., Birmingham; and John A. Karaczynski of Akin, Gump, Strauss, Hauer & Feld, L.L.P., Los Angeles, California, for appellee National Council on Compensation Insurance, Inc.
Robert A. Huffaker of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery; and Rowe W. Snider of Lord, Bissell & Brook, Chicago, Illinois, for appellee National Workers Compensation Reinsurance Pool.
*76 Carol Ann Smith of Smith & Ely, L.L.P., Birmingham, for appellees Hartford Accident & Insurance Company, Employers Insurance of Wausau, and Travelers Indemnity Company.
Joel A. Williams of Sadler Sullivan, P.C., Birmingham, for appellee Liberty Mutual Insurance Company.
John J. Davis, assoc. counsel, Alabama Department of Insurance, for amicus curiae D. David Parsons, Commissioner of the Alabama Department of Insurance.
BROWN, Justice.
The Birmingham Hockey Club, Inc., d/b/a Birmingham Bulls ("BHC"), appeals from the dismissal of its claims against National Council on Compensation Insurance, Inc. ("NCCI"), National Workers Compensation Reinsurance Pool ("National Pool"), Hartford Accident & Insurance Company ("Hartford"), Employers Insurance of Wausau ("Wausau"), Travelers Indemnity Company ("Travelers"), and Liberty Mutual Insurance Company ("Liberty Mutual"). We affirm the judgment of dismissal in part, vacate the judgment in part, and remand the case for further proceedings.

Alabama's Workers' Compensation System
Because all of BHC's factual allegations concern Alabama's system for overseeing workers' compensation insurance in the State, a brief overview of Alabama's workers' compensation system is necessary to understand the context of BHC's claims.
Employers in the State of Alabama are required by law to provide workers' compensation benefits for employees injured in the course of their employment. See § 25-5-8 and § 25-5-50 et seq., Ala.Code 1975. Generally, employers purchase workers' compensation insurance policies in the "voluntary market" from an insurer who voluntarily agrees to underwrite the employer's risk. However, when an employer is not able to obtain insurance in the voluntary market, the employer may obtain coverage in the "residual market."[1]
In the residual market, an employer is assigned an individual insurer, or "servicing carrier," from which the employer purchases a workers' compensation policy. The servicing carriers form a pool, and they remit the premium payments they receive from employers to an administrator of the pool. The rates charged to employers in the residual market are set by the insurance commissioner, and the servicing carriers do not have the authority to deviate from those rates. When an employer makes a workers' compensation claim with a servicing carrier, the servicing carrier pays the claim and is then reimbursed by the pool administrator for the loss payments made to the insured employer. At the end of each year, any funds remaining in the pool are distributed equally among the servicing carriers forming the pool.
Thus, by forming a pool and charging assigned rates, the servicing carriers share the losses incurred and the profits made each year in the residual market in Alabama. The pooling system prevents a servicing carrier from being solely responsible for paying the claim of an employer who incurs a large workers' compensation liability. Although the servicing carriers in Alabama issue policies, collect premiums, and pay losses, each servicing carrier issues the same type of policy to every employer who obtains insurance in the residual *77 market and may charge only the rates set by the insurance commissioner.
The amount of the premium an employer must pay to the servicing carrier is determined by several variables. Under the formula used to calculate the premium, the amount of remuneration the employer pays its employees is multiplied by a number called the "experience-modification factor"; the resulting number is then multiplied by the employer's "classification-code rate." Remuneration is the total amount of pay the employer remits to all its employees combined. The experience-modification factor is determined, at least in part, by the dollar amount of workers' compensation claims actually made by an employer over a certain period. The classification-code rate, also known as the bureau-loss-cost rate, varies according to the job-risk classification.

Factual Background
When BHC was incorporated in 1992, it employed primarily hockey players. Because of the hockey players' relatively high risk for future workers' compensation claims, BHC was not able to purchase insurance on the voluntary market. Consequently, BHC sought insurance coverage in the residual market and was assigned a servicing carrier. From 1992 to 1994, BHC's workers' compensation insurance servicing carrier was Continental Casualty Insurance Company.[2]
In 1994, BHC was assigned a new servicing carrier, Liberty Mutual. Liberty Mutual was a member of National Pool,[3] along with other service carriers Hartford, Wausau, and Travelers. NCCI is a licenced rating organization in Alabama and was the pool administrator for National Pool. NCCI is responsible for filing with the Alabama Department of Insurance on behalf of National Pool and its servicing carriers the proposed rates used to determine premiums. The Department of Insurance then either approves or rejects the proposed rates.
Liberty Mutual quoted BHC an estimated annual premium of $78,754 to provide workers' compensation and employers' liability insurance for one year. It appears that BHC paid the estimated premium. At the end of the year, Liberty Mutual audited BHC's payroll expenses. Liberty Mutual's auditor determined that BHC had underreported the amount of remuneration it had paid its employees. Liberty Mutual contends that BHC neglected to report as remuneration payments made to hockey players in the form of per diem living allowances, travel expenses, and payments made by BHC directly to apartment complexes for apartments for its employees. Therefore, Liberty Mutual adjusted its premium to reflect the actual remuneration paid to the players. This adjustment caused the premium to increase by $85,220. BHC refused to pay the increase in the premium.
On May 6, 1996, BHC sued Liberty Mutual, NCCI, and two individual insurance brokers and their employer, alleging fraud, deceit, suppression, and negligence and making various class-action averments. BHC claimed that the brokers and their employer had represented to BHC that BHC was purchasing a workers' compensation policy and an employers' liability *78 policy from Liberty Mutual. BHC claimed that the employers' liability policy was unnecessary because, it said, that policy provided no protection beyond what they received under the workers' compensation policy. In its class-action averments, BHC claimed that NCCI had arbitrarily increased rates for workers' compensation and employers' liability policies and that Liberty Mutual wrongly charged the increased rates. BHC made no attempts to bring these allegations before the insurance commissioner before it filed this action.
Liberty Mutual and NCCI filed motions to dismiss, or, in the alternative, for a summary judgment, arguing that the insurance commissioner had primary and exclusive jurisdiction over BHC's claims. Additionally, Liberty Mutual and NCCI argued that because BHC's complaint merely alleged that BHC had suffered damage as the result of paying rates lawfully set by the insurance commissioner, BHC's claims were barred by the filed-rate doctrine.[4] The two independent insurance brokers filed a motion for a summary judgment based on evidence that demonstrated, according to the brokers, that the employers' liability insurance policy covered claims that were not covered by the workers' compensation insurance policy.
On February 5, 1997, BHC filed an amended complaint, in which it made further allegations against NCCI. NCCI and Liberty Mutual answered the second complaint and renewed their motions for dismissal or for a summary judgment. On September 4, 1997, Liberty Mutual filed a counterclaim against BHC for the unpaid balance on the insurance premium. On May 22, 1998, BHC filed its second amended complaint, making class-action allegations against an additional 350 fictitiously named defendants. BHC contended, without explanation, that some of the defendants charged BHC and other class members rates that deviated from those approved by the insurance commissioner. The named defendants answered the complaint and renewed their motions for dismissal or for a summary judgment.[5]
On December 15, 1999, BHC filed its third amended complaint, adding National Pool, Hartford, Wausau, Travelers, and 18 additional servicing-carriers as defendants. BHC alleged that the defendants had wrongly charged BHC rates that exceeded the rates approved by the insurance commissioner. Specifically, BHC contended that in 1993 and 1994, NCCI improperly increased its premium rates and altered the rating plan used to calculate premiums without securing approval from the insurance commissioner for the altered rating plan and the new rates. BHC sought reimbursement for the "false" or "unlawful" rates charged to it and other class members by the various servicing carriers.
BHC made further allegations against the defendants, i.e., that they had engaged in tax evasion, that they had conspired to operate as unlicensed insurers, and that they had conspired to limit employers' access to the voluntary market. BHC alleged that NCCI was without authority to act as the administrator for Alabama's workers' compensation insurance plan and that National Pool was not "properly engaged *79 to play its role in Alabama's [workers' compensation insurance plan]." BHC also alleged that Alabama's entire workers' compensation plan had never been properly approved by the insurance commissioner and that it violated the Alabama Constitution. The defendants answered the complaint and filed motions for dismissal and for a summary judgment.
On September 1, 2000, the trial court issued an order dismissing BHC's claims against all defendants except Liberty Mutual. The trial court, after noting that BHC's claims and allegations in this action had shifted numerous times, explained its rationale:
"The last claimed actionable conduct in this case occurred in July of 1994. This lawsuit was originally filed on May 6, 1996. No fictitious parties were named therein. The first pleading naming fictitious parties was filed on February 4, 1997.[[6]] On August 25, 1998, the plaintiff undertook its first substitution for a fictitious party. On December 15, 1999, the plaintiff undertook to name by substitution all remaining insurance carriers who participated in the workers' compensation insurance industry in Alabama, regardless of their capacity. Inasmuch as the Statute of Limitations had expired before there was any claim [that] there might be fictitious parties in this lawsuit, it is quite clear there is nothing to which the complaint of December 15, 1999, can relate back. Accordingly, all claims for negligence and unjust enrichment are due to be and are hereby dismissed.

"The motions to dismiss are treated as such and also as motions for summary judgment inasmuch as discovery [h]as been had and evidentiary submissions have been made in connection with the briefs and arguments. There is no claim that any named insurance carrier dealt directly with the plaintiff in this case. Further, the only carrier with which plaintiff had any contact was the defendant, Liberty Mutual Insurance Company. Accordingly, all claims for deceit and misrepresentation against all defendants except Liberty Mutual are due to be and are hereby dismissed.

"The claims against defendants, NCCI and The National Workers' Compensation Reinsurance Pool, under the sixth and seventh causes of action [requests for declaratory relief against NCCI and National Pool] are due to be and are hereby dismissed for the reasons stated by the defendants in briefs. No claim is stated against any other defendant[;] therefore all other claims under the sixth and seventh causes of action are dismissed.

"All claims against all parties added on August 25, 1998, and December 15, 1999, are therefore dismissed by this Order. The only claims [not] disposed of are those against National Council [on] Compensation Insurance, Inc. (NCCI), and Liberty Mutual Insurance Company, the original defendants in this action. The remaining claims against NCCI as originally stated and as amended are due to be and are hereby dismissed pursuant to the filed rate doctrine and exclusive jurisdiction doctrine as set forth in brief

"The claims and counterclaims between plaintiff and defendant, Liberty Mutual Insurance Company, remain pending and are hereafter set for trial."
*80 The trial court also dismissed all of BHC's class-action claims. On November 16, 2000, Liberty Mutual moved to dismiss its counterclaim against BHC, stating as its reason that BHC was insolvent and that it was no longer possible to collect the unpaid portion of the premium from BHC. On the same day, the trial court granted Liberty Mutual's motion to voluntarily dismiss its claim and then dismissed BHC's claims against Liberty Mutual. BHC now appeals the dismissal of its case.

I.
BHC contends that the trial court erred in dismissing its claim alleging unjust enrichment as being barred by the statute of limitations. It appears, however, that BHC has failed to preserve this argument for appellate review. In order to be considered on appeal, issues must be presented to the trial court and to the opposing parties at the trial level.
"`The Oregon Court of Appeals has stated additional reasons for holding that an error not raised and preserved at the trial level cannot be considered on appeal:
"`"[I]t is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to a court; ... fairness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to; ... the rule promotes efficient trial proceedings;... reversing for error not preserved permits the losing side to second-guess its tactical decisions after they do not produce the desired result; and ... there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right. The principal rationale, however, is judicial economy. There are two components to judicial economy: (1) if the losing side can obtain an appellate reversal because of error not objected to, the parties and public are put to the expense of retrial that could have been avoided had an objection been made; and (2) if an issue had been raised in the trial court, it could have been resolved there, and the parties and public would be spared the expense of an appeal."'"
Ex parte Elba Gen. Hosp., 828 So.2d 308, 314 (Ala.2001), quoting Cantu v. State, 660 So.2d 1026, 1031-32 (Ala.1995)(Maddox, J., concurring in part and dissenting in part), quoting in turn State v. Applegate, 39 Or. App. 17, 21, 591 P.2d 371, 373 (1979).
BHC argues that the trial court erroneously applied a two-year statute of limitations to its claims rather than the six-year statute of limitations found in § 6-2-34, Ala.Code 1975. Although BHC argues this issue extensively in its briefs on appeal, it failed to argue this issue to the trial court, and it deprived the opposing parties of an opportunity to respond to it. This case was litigated for 4 years at the trial level and produced 13 volumes of record, along with 2 additional boxes of deposition testimony and other filings, yet an allusion to the applicability of a 6 year statute of limitations to BHC's unjust-enrichment claim appears in only one-half of a sentence in a postjudgment motion.
In its "Motion to Reinstate and/or Motion to Clarify," filed on September 14, 2000, BHC argued to the trial court that its September 1, 2000, order was in error because, BHC said, it had properly brought its unjust-enrichment claim within the two-year limitations period. In furtherance of its argument, BHC stated on the last page of the three-page motion, "[a]ssuming there is a two year statute of *81 limitations for unjust enrichment and imposition of a constructive trust or an equitable lien, and not the six year statute specified in Alabama Code § 6-2-34(3), Plaintiff's claims against National Workers Compensation Reinsurance Pool were filed within two years of its last actionable conduct." This is the only reference appearing in the entire record to the applicability of a six-year statute of limitations, and BHC does not cite to this Court any other instance in which this argument was presented to the trial court. Instead, BHC argues extensively throughout the record that its claims were brought within a two-year limitations period.[7] It can hardly be said that BHC has presented this argument to the trial court and opposing parties so as to give them an opportunity to address this issue. Because BHC argues this issue for the first time on appeal, the trial court's dismissal of BHC's unjust-enrichment claim is due to be affirmed.

II.
BHC characterizes its primary issue on appeal as whether "a regulated entity may charge rates greater than the rates approved by the regulator."[8] BHC contends that NCCI wrongly increased insurance premium rates in 1993 and 1994 without proper approval from the insurance commissioner. Specifically, BHC argues that the increased rates in 1993 and 1994 were not approved by the insurance commissioner because, BHC says, the commissioner failed to comply with § 25-5-8(f)(2), Ala.Code 1975. Section 25-5-8(f)(2) states, in pertinent part: "The Commissioner of the Department of Insurance shall convene a public hearing with reasonable public notice for the purpose of considering public testimony and other evidence relevant to any filing prior to approval of any bureau-loss cost or rate filing related to workers' compensation insurance."
BHC alleges that in 1993, NCCI altered one of the components of the experience-modification factor, the "Deductible Experience Rating Formula" ("DERF"), without prior approval from the insurance commissioner. BHC argues that this alteration resulted in increased premiums for employers. BHC further alleges that any purported approval by the insurance commissioner of the alteration in the DERF is void because the commissioner failed to hold a hearing on the increase as required by § 25-5-8(f)(2), Ala.Code 1975. In response, NCCI argues that BHC lacks standing to challenge any change to the DERF because the DERF affected only insureds who had "deductible" policies. NCCI contends, and BHC does not dispute, that BHC did not have a "deductible" policy; therefore, NCCI says, any change in the DERF had no effect on BHC.[9]
In its amicus curiae brief, the Department of Insurance asserts that it did approve *82 the alteration of the DERF in 1993 and that it was not required by law to hold a hearing before it approved the change to the DERF. The Department of Insurance explains that under § 25-5-8(f)(2), Ala. Code 1975, it is required to hold public hearings only before approving an increase in "any bureau-loss cost" or "rate filing." According to the Department of Insurance, the DERF is neither a "bureau-loss cost" nor a "rate filing." Therefore, the Department of Insurance contends that it properly approved the 1993 alteration of the DERF without holding a public hearing and that NCCI properly increased the rates after that approval.
BHC further alleges that in 1994 NCCI increased premium rates charged to employers in the residual market by 19%. BHC contends that the insurance commissioner denied NCCI's request for the 19% increase and that, therefore, NCCI wrongly charged BHC 19% over the rates actually approved by the insurance commissioner. NCCI responds that the insurance commissioner had, in fact, approved the increase. In support of its argument, NCCI points to documents in the record that tend to show that the Department of Insurance did approve the 19% increase in 1994. The Department of Insurance argues in its amicus curiae brief that it properly approved the 1994 increase in premium rates after a public hearing.
The Department of Insurance strongly argues to this Court that the issues involved in this action come within its jurisdiction because of the technical questions raised and because expertise in insurance matters and in rate-setting is required to resolve these issues. We agree. The issues that have arisen in BHC's claim against NCCI should be addressed by the Department of Insurance under the doctrine of primary jurisdiction.
"`The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.'
". . . .
"One of the aims of the doctrine is to insure uniformity and consistency in dealing with matters entrusted to an administrative body. Another factor which must be considered is whether referral to an agency is preferable because of its specialized knowledge or expertise in dealing with the matter in controversy. Still another is whether initial review of the controversy by the administrative body will either assist a court in its adjudicatory function or perhaps alleviate entirely the need for resort to judicial relief. This latter factor indicates it is preferable to obtain the views of the administrative body concerning the statutes or rules with which it must work and how those statutes or rules should be applied to the controversy at hand."
Fraternal Order of Police, Strawberry Lodge # 40 v. Entrekin, 294 Ala. 201, 210, *83 314 So.2d 663, 671 (1975) (citations omitted). "The doctrine of primary jurisdiction implies that matters entrusted by the legislature to an administrative agency, ought first be considered by that agency. Thus when a controversy arises as to how an agency is conducting its affairs, a demand for corrective action first should be made to that agency...." Entrekin, 294 Ala. at 212, 314 So.2d at 673.
Although the trial court dismissed BHC's claim against NCCI based in part on the doctrine of exclusive jurisdiction, BHC's claim was not cognizable in the first instance by an administrative agency alone, as Entrekin requires.[10] BHC's final amended complaint alleged that NCCI and the other defendants had charged rates in excess of the filed rate approved by the insurance commissioner. This Court has held that such a claim is cognizable in the first instance in the circuit court and that a party bringing such a claim is not required to first seek an administrative hearing. Ex parte Blue Cross & Blue Shield of Alabama, 582 So.2d 469 (Ala.1991). Therefore, because BHC's claim as stated in its complaint is cognizable in the first instance in the circuit court, the claim is barred by neither the doctrine of exclusive jurisdiction nor by the filed-rate doctrine.[11] See id. See also Allen v. State Farm Fire & Cas. Co., 59 F.Supp.2d 1217 (S.D.Ala.1999)(noting that although the plaintiffs state-law claim was barred by the doctrine of exclusive jurisdiction, by the doctrine of primary jurisdiction, and by the filed-rate doctrine, the outcome of the case may have been different if the plaintiff had claimed that the defendants had applied a rate in excess of that approved by the insurance commissioner); and Emperor Clock Co. v. AT & T Corp., 727 So.2d 41 (Ala.1998)(noting that because the plaintiff did not claim that the defendant had charged a rate in excess of the filed tariff, but instead claimed that the defendant had misrepresented the applicable rate to the plaintiff, the claim was barred by the filed-rate doctrine).
Thus, although BHC's claim, as stated in its complaint, was cognizable in the first instance in the courts, the issues that have developed clearly come within the jurisdiction of the Department of Insurance. The issues whether BHC was affected by the altered DERF, whether the DERF is a bureau-loss cost or a rate filing, and whether the 19% increase was reflected in BHC's premium rates are questions that require specialized knowledge to answer. Furthermore, whether the insurance commissioner approved the 19% increase in premium rates after conducting a hearing is a matter concerning the operations of the Department of Insurance and should be addressed in the first instance by the commissioner. An administrative determination by the Department of Insurance of the issues now before us will ensure uniformity, will assist this Court, and may alleviate entirely the need for resort to judicial relief in this case.
We agree with the trial court that the issues argued by BHC against NCCI are best addressed in the first instance by the commissioner, who has the expertise and *84 knowledge necessary to make findings concerning the operations of the Department of Insurance and to resolve the technical questions BHC raises. However, we do not agree with the trial court that the claims against NCCI are due to be dismissed on the basis of the filed-rate doctrine or the doctrine of exclusive jurisdiction. Because BHC's claims against NCCI were properly brought in the circuit court and because issues have arisen requiring resolution by the insurance commissioner, we apply the doctrine of primary jurisdiction.
A court has several options for disposing of a case after invoking the doctrine of primary jurisdiction.
"Primary jurisdiction may be invoked where a claim that is properly before the court nonetheless falls within the particular expertise of a government agency, such as the [Interstate Commerce Commission]. Under this doctrine, the court may retain jurisdiction, or it may dismiss the case without prejudice. Reiter v. Cooper, 507 U.S. 258, 268-69, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993). The court also has the option of staying the proceedings, retaining jurisdiction and referring the matter to the agency for an administrative ruling. Id. The option rests with the court, though; it need not refer the matter to the agency if it does not desire to do so. Id."
Jones Truck Lines, Inc. v. Price Rubber Corp., 182 B.R. 901, 911 (M.D.Ala.1995). A court should not dismiss a case, however, when the dismissal would "unfairly disadvantag[e]" a party. Reiter v. Cooper, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). In Entrekin, supra, this Court noted that it is appropriate for the trial court to stay proceedings in a case and to retain jurisdiction pending agency review when the doctrine of primary jurisdiction is applicable. The Court further noted that a stay rather than a dismissal is especially appropriate where the claims of a party would otherwise be barred by a statute of limitations. Entrekin, 294 Ala. at 210, 314 So.2d at 671.
Therefore, because the doctrine of primary jurisdiction applies to BHC's claims against NCCI and because a dismissal might unfairly disadvantage BHC, we vacate the trial court's judgment of dismissal as it pertains to BHC's claims that NCCI wrongly increased premium rates in 1993 and 1994 above those approved by the insurance commissioner. We remand this case to the trial court so that it may enter a stay pending the resolution of issues discussed in this portion of the opinion insofar as they pertain to NCCI.

III.
Finally, BHC contends that the trial court's dismissal of its claims against Liberty Mutual on November 16, 2000, was erroneous. Upon a closer reading of BHC's briefs on appeal, however, it appears that BHC is actually challenging the trial court's dismissal of Liberty Mutual's counterclaim against BHC. BHC's arguments against the dismissal are based on factual issues addressed exclusively in Liberty Mutual's counterclaim against BHC, and BHC attempts to contend in its reply brief that the trial court's order allowing Liberty Mutual's voluntary dismissal was defective.
BHC cites this Court to no authority that would allow it to challenge the trial court's dismissal of Liberty Mutual's counterclaims against BHC. Liberty Mutual requested that the trial court dismiss its counterclaim against BHC because BHC was no longer a viable financial entity and because it would have been almost impossible for Liberty Mutual to collect the unpaid portion of the premium, even if it received a favorable ruling. The trial *85 court properly granted Liberty Mutual's motion to dismiss in accordance with Rule 41(a)(2) and Rule 41(c), Ala. R. Civ. P., and then dismissed BHC's action against Liberty Mutual.
"`Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor [our] function to perform all of the legal research for an appellant.'" McLemore v. Fleming, 604 So.2d 353, 353 (Ala.1992), quoting Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App.1984). "Furthermore, we cannot, based on undelineated propositions, create legal arguments for the appellant." McLemore, 604 So.2d at 353. BHC has demonstrated no reason to disturb the trial court's dismissal of its claims against Liberty Mutual.

Conclusion
BHC failed to present its argument concerning a six-year statute of limitations to the trial court; that argument, therefore, was not preserved for appellate review. While we agree with the trial court that the Department of Insurance is the appropriate body to address the issues of BHC's claims against NCCI, we vacate the trial court's dismissal as to BHC's claims against NCCI alleging that NCCI illegally raised rates in 1993 and 1994 and direct the trial court to enter a stay pending resolution of those claims by the Department of Insurance. Finally, BHC has presented this Court with no reason to disturb the dismissal of its claims against Liberty Mutual. Accordingly, we affirm the trial court's judgment in part, we vacate the judgment in part, and we remand the case.
AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
MOORE, C.J., and HOUSTON, LYONS, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part and concurs specially in part.
SEE, J., recuses himself.
JOHNSTONE, Justice (concurring in part and concurring specially in part).
I would not want for our rationale for our affirmance of the dismissal of the untimely unjust-enrichment claims to be misconstrued to mean that "only one-half of a sentence" citing a statute to a trial court cannot preserve error for review. The "one-half of a sentence" in this particular case is inadequate because the statute of limitations it invokes does not expressly apply to the unjust-enrichment claims. The statute cited by the plaintiff is § 6-2-34(3), Ala.Code 1975, which provides a six-year limitation period for filing "[a]ctions for the detention or conversion of personal property." How this statute of limitations would apply to unjust-enrichment claims would need some explaining. If the statute were expressly applicable and efficacious to the plaintiffs unjust-enrichment claims, we would not want to require a less concise explanation to preserve error. In all other respects, I concur in the main opinion.
NOTES
[1] The residual market is also known as "the assigned-risk market," "the involuntary market," or "the market of last resort."
[2] It takes two years for an insurer to gain sufficient data on an employer's history of workers' compensation claims to establish an experience-modification factor. Therefore, BHC did not have an experience-modification-factor adjustment during the policy years when BHC's servicing carrier was Continental Casualty Insurance Company (1992-1994).
[3] National Pool, despite its name, is a state-specific entity. The servicing carriers that make up National Pool share only in the pool results for Alabama.
[4] The filed-rate doctrine provides that once a filed rate is approved by the appropriate governing regulatory agency, it is per se reasonable and is unassailable in judicial proceedings. Allen v. State Farm Fire & Cas. Co., 59 F.Supp.2d 1217, 1227 (S.D.Ala.1999).
[5] The two independent insurance brokers and their employer settled with BHC; they are not parties to this appeal.
[6] On February 4, 1997, BHC filed a motion with the trial court, seeking permission to add fictitiously named defendants.
[7] Before the trial court's September 1, 2000, order, several of the defendants had submitted motions to dismiss, arguing that BHC's claims were barred by a two-year statute of limitations. BHC submitted a brief over 40 pages long in response. In that brief, BHC made several arguments as to why its claims were not barred by a two-year statute of limitations; however, none of BHC's arguments mentioned the applicability of a six-year statute of limitations or of § 6-2-34, Ala.Code 1975.
[8] Although the bulk of the litigation after BHC's final amended complaint centered around the issue whether the Department of Insurance had properly approved Alabama's workers' compensation system, BHC does not argue this issue on appeal.
[9] BHC alleged in its final amended complaint that the defendants failed to provide BHC with a policy containing "optional deductibles."
[10] When an agency has exclusive jurisdiction over an issue, a plaintiff is required to exhaust administrative remedies with the agency before resorting to the courts. See South Cent. Bell Tel. Co. v. Holmes, 689 So.2d 786 (Ala. 1996); Talton Telecomm. Corp. v. Coleman, 665 So.2d 914 (Ala.1995); Mobile & Gulf R.R. v. Crocker, 455 So.2d 829 (Ala.1984).
[11] Because the filed-rate doctrine prohibits collateral challenges to rates properly approved by the insurance commissioner, any such challenge raised in the courts is due to be dismissed. See Allen v. State Farm Fire & Cas. Co., 59 F.Supp.2d 1217, 1227-29 (S.D.Ala.1999).