LIBERTY MUTUAL FIRE INSURANCE COMPANY *vs.*
COMMISSIONER OF INSURANCE.

Suffolk. November 3, 1959. — March 2, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Insurance*, Rating, Windstorm insurance. *Words*, "Deviation."

After a fire insurance rating association licensed under G. L. c. 174A had filed for its members and subscribers a mandatory "$50 deductible" windstorm and hail coverage and had declined to file an optional alternative "$100 deductible" coverage with a lower rate, an application by a mutual fire insurance company, a subscriber of the association, to the commissioner of insurance for leave to file such "$100 deductible" coverage for itself alone and not for the members and other subscribers of the association was an application for leave to file a "deviation" within c. 174A, § 9. [414, 419]

In G. L. c. 174A, § 9, the word "deviation" is synonymous with "variation." [419]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on December 5, 1958.

The case was heard by *Cutter*, J.

*Leo Sontag*, Assistant Attorney General, for the respondent.

*Franklin J. Marryott*, (*Patrick J. Kelly* with him,) for the petitioner.

WILKINS, C.J. This is a petition for a review of an order of the respondent commissioner of insurance denying the application of the petitioner, Liberty Mutual Fire Insurance Company, for a deviation from certain windstorm insurance rates, rules, and schedules filed by New England Fire Insurance Rating Association (NEFIRA), to which Liberty is a subscriber. G. L. c. 174A, § 18 (c), as amended by St. 1954, c. 681, § 17. The commissioner's demurrer, on the ground that the petition did not set forth facts sufficient to warrant relief, was overruled by an interlocutory decree. There was a hearing on the merits before a single justice on the basis of the record before the commissioner. He filed findings and rulings. A final decree was entered remanding the matter to the commissioner for further proceedings in which he was ordered to entertain the company's proposal as one for a deviation of a character which G. L. c. 174A, § 9, inserted by St. 1947, c. 614, § 1, authorizes him to approve in the event that he finds that the proposal otherwise satisfies the standards and requirements of c. 174A. The commissioner appealed from both decrees.

General Laws c. 174A is known as the fire, marine, and inland marine rate regulatory law (§ 1), and became effective October 1, 1947. St. 1947, c. 614, § 3. Effective the same date was G. L. c. 175A, known as the casualty and surety rate regulatory law (§ 1). St. 1947, c. 641, § 3. The occasion for this legislation is described in *Insurance Co. of No. America* v. *Commissioner of Ins.* 327 Mass. 745, 747–750. See *Insurance Co. of No. America* v. *Commissioner of Ins.* 334 Mass. 108.

Only capital stock insurance companies can be members of NEFIRA under its by-laws. Mutual companies, such as the petitioner, may receive its service as a subscriber, but

are not entitled to vote at meetings. NEFIRA is a licensed rating organization under c. 174A. It has filed for all its members and subscribers a mandatory $50 deductible windstorm and hail rate for dwellings (which forms a part of the coverage furnished under so called extended coverage indorsement No. 4). Under this filing the first $50 of any windstorm or hail loss is to be deducted from any indemnity payable by the insurer. The insured in effect becomes a self insurer for the first $50 of certain losses as defined in the coverage.

Because rates on windstorm coverage have increased in recent years due to New England's hurricane record and a general rise in repair costs, the company believes that there is a public need and demand for $100 deductible windstorm coverage for dwellings. The company, however, having been unable to induce NEFIRA to file a $100 deductible coverage as an optional alternative to the $50 deductible coverage, made request under G. L. c. 174A, § 9, for permission to file a deviation from NEFIRA's rates under which Massachusetts holders in the dwelling class could insure against windstorm and hail through a policy providing a $100 deductible indemnity. The premium would be twenty-five per cent less than for the $50 deductible coverage.

After the insurance division rejected the deviation without a hearing, the company, pursuant to G. L. c. 174A, § 18 (a), requested a hearing before the commissioner. That hearing was conducted on the commissioner's behalf by the fire and casualty actuary, who heard witnesses and received exhibits in evidence. The actuary concluded that the deviation was not proper under c. 174A, § 9. Upon appeal the commissioner affirmed the actuary's decision. Both the demurrer and the answer present the question whether the proposal is one which may properly be filed under c. 174A, § 9.

The material portion of c. 174A, § 9, reads: "Every member of or subscriber to a rating organization shall adhere to the filings made on its behalf by such organization except that any such insurer may make written application to the

commissioner for permission to file a deviation from the class rates, schedules, rating plans or rules respecting any kind of insurance, or class of risk within a kind of insurance, or combination thereof."

The controversy is, in part, the result of the absence in the statute of a definition of "deviation." No case of ours, nor any we have seen from any other jurisdiction, is of great assistance in supplying the omission. In *Insurance Co. of No. America* v. *Commissioner of Ins.* 327 Mass. 745, 757, we said, "A deviation must be from a rating rule, or at least from a rule affecting rates." But this statement does not shed light upon the issue whether the addition of an optional $100 deductible coverage as an alternative to the filed $50 deductible coverage, and not at all by way of substitution, meets the statutory authorization. The commissioner's position has been that, since the original filing remains intact, any enlargement of its provisions, while retaining the benefits of that filing, cannot be a deviation, as there has been no definite departure from a given course, and the company would have, in substance, two filings instead of one. The single justice stated in his findings and rulings that "Liberty's proposal is to permit a policy holder at his option to insure himself for an additional $50 of initial loss in return for a twenty-five per cent reduction in premium, a clear change in provisions of rates, rating rules, and schedules relating to rates." The commissioner argues in reply that c. 174A, § 10,[1] deals with the subject of "appeal to the commissioner from the action or decision of . . . [a] rating organization in approving or rejecting any proposed change in or addition to the filings" of that organization; and that § 9 is not a concurrent remedy. On this subject the single justice found: "Proceeding under § 10 would involve an attempt by Liberty to force NEFIRA to adopt Liberty's $100 deductible proposal as a coverage which all NEFIRA's members and subscribers would be compelled to

[1] "Any member of or subscriber to a rating organization may appeal to the commissioner from the action or decision of such rating organization in approving or rejecting any proposed change in or addition to the filings of such rating organization . . . ."

offer to their customers.  It would be an effort by one subscriber to coerce the whole membership of NEFIRA, and all other subscribers, into a pattern by which they, reasonably perhaps, might not wish to be bound."  Accepting these statements, we observe nothing surprising nor anything which is not a necessary consequence of being one subscriber in an organization which acts on behalf of many. The company, of course, does not have to be a subscriber to this rating organization.  See, for example, G. L. c. 174A, § 6.

The single justice construed the conclusion of the actuary that the application for a deviation "is not a proper one under § 9 of c. 174A" as in effect a ruling that that section "does not contemplate that a subscriber to a fire insurance rating organization . . . shall file a deviation which includes both (a) a reduction of the scope of a particular insurance coverage from that stated in the rating organization's filing, and (b) a reduction of premium rate based upon the reduced coverage."  While this is not decisive, we nevertheless think that the actuary was ruling that an optional choice in addition to a filed rate, which continued available unchanged, could not be a deviation.  In other words, he was ruling that the subscriber could not adhere to a rate and deviate from it at the same time.

Comparison of the deviation provision of the fire rate regulatory statute, G. L. c. 174A, § 9, with that of the casualty and surety rate regulatory law, G. L. c. 175A, § 9, discloses that under the latter there may be a deviation only of "a uniform percentage decrease or increase to be applied to the premiums produced by the rating system." Both acts are based upon the all industry bills considered by the joint conference of the all industry committee and the subcommittee of the National Association of Insurance Commissioners on rates and rating organizations.  In the proceedings of the National Association of Insurance Commissioners, 77th session, 1946, page 376, the committee said: "The deviation section in the fire, marine and inland

marine rate regulatory bill differs somewhat from the deviation section of the casualty and surety bill. It is broader in scope since it does not require a uniform percentage deviation and reflects the difference in the methods of operation of the two businesses."

The actuary, in considering this statement, made findings as to the differences in the two businesses. He then found: "Because the mutual companies are more selective in their underwriting, the loss experience of mutual companies is normally better than that of stock companies. Rates, as in the fire lines, based exclusively on stock company losses and expenses, offer a much broader base for deviation by a mutual company than rates in the casualty field where the rates are based on the experience of all member companies. In the latter instance the filed rates have met the test of adequacy, nonexcessiveness and no unfair discrimination. . . . [T]he memorandum prepared by the special committee on legislation of the American mutual alliance . . . states in part, 'The individual insurer which wishes to deviate generally is required by laws [*sic*] to demonstrate in advance the validity of its request. Its experience has been considered in the development of the rating organization's filings and it should be prepared to justify fully its request for a departure from these filings.' Hence the area for deviation is limited in the casualty lines."

On this point the single justice stated that § 9 of the fire insurance regulatory law, c. 174A, "is much more liberal in its language and permits 'a deviation from the class rates, schedules, rating plans or rules respecting any kind of insurance, or class of risk within a kind of insurance, or combination thereof.' This is very broad language and the legislative history shows that it was intentional. . . . It is obvious that the differences between the two sections point to a considerably wider range of permissible deviation under the fire . . . [statute] than under the casualty . . . [statute]. That difference in the two sections makes impossible any narrow definition of 'deviation,' such as appears in Professor Kulp's 'Rate Making Process in Property and

Casualty Insurance,' 15 Law & Contemp. Prob. 493, 514, where he says, 'Even for insurers joining a rate bureau the rate laws permit opportunity for deviation from uniform rates. A deviation is a uniform percentage decrease or increase on the rate filed on all or a class of insured risks. In fact all deviations are minus; plus deviations exist only in the statute because practically when an insurer cannot do business at bureau rates it goes out of business. A deviation is to be distinguished both from a filing by an independent and from changes in and supplements to a filing by a rate bureau.' It is obvious in the light of the legislative history, that under c. 174A, § 9, a deviation is not limited to 'a uniform percentage decrease or increase on the rate filed on all or a class of insured risks.'"

We think that the single justice ruled correctly. We are not impressed with the argument that the right under § 10 to appeal to the commissioner from the action of a rating organization in approving or rejecting any proposed change or addition to its filings precludes what the petitioner has tried to do under § 9. The petitioner did not want a change in which all the members and subscribers would share. It sought a new rate for itself alone. Neither do we think that the petitioner was required to withdraw from NEFIRA for windstorm coverage and make a separate filing of rates, rules, and schedules for that type of insurance under c. 174A, § 6. This would involve Liberty in various disadvantages, as the single justice found. Dictionary definitions of "deviation" are inconclusive. The difference in the phraseology of the two sections 9, which took effect on the same day, is significant. In the fire rating law, we think that "deviation" is synonymous with "variation." If this is what the Legislature has said, and such is our opinion, there is no occasion for extended analysis of other arguments. Should it be thought that the Legislature intended otherwise, the opportunity exists to obtain a clarification of the statute in the interests of avoiding further litigation.

> *Interlocutory decree affirmed.*
> *Final decree affirmed.*