**William M. ALLEN, etc., Plaintiffs,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY and Allstate Insurance Company, Defendants.**

**No. CA 98–1226–MJ–C.**

United States District Court,
S.D. Alabama,
Southern Division.

June 25, 1999.

Steven A. Martino, Mobile, AL, Stephen L. Klimjack, Jackson, Taylor & Martino, Mobile, AL, Richard Scruggs, W. Steve Bozeman, Charles J. Mikhail, Lee Young, Scruggs, Millette, Lawson, Bozeman & Dent, Pascagoula, MS, for plaintiffs.

Edward S. Sledge, III, Archibald T. Reeve, IV, McDowell Knight Roedder & Sledge, L.L.C., Mobile, AL, for State Farm Fire and Casualty Company, defendant.

Louis E. Braswell, Henry T. Morrissette, Hand Arendall, L.L.C., Mobile, AL, for Allstate Insurance Company, defendant.

### MEMORANDUM OPINION AND ORDER

CASSADY, United States Magistrate Judge.

This cause is before the Court on the defendants' motions to dismiss and/or motions for summary judgment (Docs. 2, 19 & 25), plaintiff's briefs in opposition to the defendants' dispositive motions (Docs. 30 & 35; *see also* Doc. 34), the reply briefs of the defendants (Docs.37–38), the June 7, 1999 arguments of the parties in support of their respective positions, and the post-hearing submissions of the defendants. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings, including disposition of these motions. (*See* Doc. 18 ("In accordance with the provisions of 2[8] U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case hereby voluntarily consent to have a United States Magistrate Judge conduct any and all further proceedings in the case,

including the trial, and order the entry of a final judgment.")) Upon consideration of the contents of the briefs and all pertinent material submitted in support of those briefs, the arguments of counsel, and the post-hearing submissions of the defendants, the Court **GRANTS** the defendants' motions and **ORDERS** that the plaintiffs' complaint be **DISMISSED WITHOUT PREJUDICE.**

### FINDINGS OF FACT

1. The named plaintiffs, William M. Allen and Dorothy Todd, had homeowners insurance policies issued, respectively, by defendants State Farm Fire and Casualty Company ("State Farm") and Allstate Insurance Company ("Allstate"). (Doc. 9, Amended Complaint, ¶¶ 25 & 26)[1] Plaintiffs seek to represent a class of homeowners insurance policyholders in the costal counties of Alabama, specifically Mobile and Baldwin Counties, Alabama. (*Id.,* ¶ 24)

2. Plaintiffs allege that Allstate and State Farm acted in concert to change the hurricane deductible in the putative class members' insurance policies from a "flat fee" deductible to a percentage of the value of the home and/or the loss. (*Id.,* ¶ 23) Plaintiffs further allege that Allstate conspired with State Farm and that the two insurers threatened Alabama's insurance commissioner that they would not offer homeowners insurance coverage in the coastal counties of Alabama unless the commissioner allowed them to include a 5% hurricane deductible. (*Id.,* ¶ 24) As a result of this alleged "forced arrangement" between the defendants and the commissioner, the commissioner allowed State Farm and Allstate to include the hurricane deductible in Alabama's coastal counties. (*Id.*)

3. When State Farm changed its homeowners policy provisions to add a hurricane deductible based on a percentage of the coverage amount in the coastal areas of Alabama, State Farm filed with and obtained approval from the commissioner for the hurricane deductible endorsement and the applicable rates with respect to the policies to which that endorsement would be applied. (Doc. 27, Exhibit A, Affidavit of Karen Terry, ¶ 3; *see also id.,* Exhibit B (Department of Insurance Endorsement Approval))

4. Approximately ten days prior to the mailing of the renewal billing package, State Farm sent a pre-renewal letter to its insured Alabama homeowners which informed them of the changes in their policies, including the introduction of the new hurricane deductible. (*Id.,* Exhibit A, Terry Affidavit, at ¶ 5 & Exhibit 1)

5. Forty-five days prior to the date of renewal, State Farm issued the renewal billings for its existing homeowners policyholders. (Terry Affidavit, at ¶ 4) Included within each billing was the approved hurricane endorsement, an insert discussing the rate changes and hurricane deductible program, and a renewal certificate itemizing both the applicable premium using the new rates and the endorsements applicable to the policy. (*Id.* at ¶ 4 & Exhibit 2) For renewal business, a notice was printed on the endorsement. (Terry Affidavit, at ¶ 4)

6. The notice State Farm issued was printed on the endorsement form entitled "Important Notice ... Concerning Your Hurricane Deductibles" and highlighted the addition of the new hurricane deductible endorsement to the policy. (*Id.,* at Exhibit 2) The notice directed policyholders to read the endorsement carefully and advised that the higher hurricane deductible "means the portion of each covered hurricane loss for which you are responsible increases." (*Id.*) The notice provision also informed policyholders that the declarations page of their policies illustrated the new deductible. (*Id.*) Furthermore, the notice declared that the hurricane deductible endorsement was to be effective on the renewal date of the policy and advised policyholders to contact their State Farm agent if they had any questions. (*Id.*)

---

1. Though the Court has never ruled upon plaintiff's motion to amend the complaint

(Doc. 9), that motion is obviously due to be and hereby is **GRANTED.**

7. When Allstate changed its policy provisions to add a hurricane deductible for certain insureds in the state of Alabama, it mailed notices concerning the deductible change to each of these insureds, along with the endorsement setting forth the change. (Doc. 3, Exhibit B, Affidavit of James Rowland, ¶¶ 5–8)

8. The notice Allstate sent was a stand-alone document which was clearly labeled **"Important Notice,"** and it specifically stated, **"We've Made a Change to Your Allstate Property Insurance Policy[.]"** (Rowland Affidavit, Exhibit 1 (emphasis in original)) The notice explained that Allstate was implementing a hurricane deductible with explicit reference to the deductible amount on an attached renewal declarations page. (Rowland Affidavit, Exhibits 1 & 2) The notice specifically stated "we are implementing a Hurricane Deductible, which will take effect with the renewal of your policy." (Rowland Affidavit, Exhibit 1)

9. Allstate sent the renewal information, including the hurricane deductible endorsement itself, as well as the aforementioned notice and a renewal declarations page showing the insured exactly how much, in dollars, the deductible would be, to the renewing insureds 45 days prior to the end of their policy term. (*Id.*, ¶ 8 & attachments)

10. Plaintiffs regularly paid their insurance premiums and performed each act required to keep their policies in full force and effect. (Doc. 9, Amended Complaint, ¶ 27)

11. On or about September 27th, 28th and 29th, 1998, plaintiffs' homes, and those of the putative class, suffered damage as a result of Hurricane Georges. (*Id.*, ¶ 28)

12. Plaintiffs contend that Allstate and State Farm became obligated to pay full benefits, without a percentage deductible, under the terms of the relevant policies and the laws of the state of Alabama, but have failed to pay those benefits. (*Id.*, ¶¶ 28–29)

13. Plaintiffs have asserted causes of action for breach of contract, interference with contractual business relations, conspiracy, inadequate notice, restraint of trade and unjust enrichment. (*Id.*, at 9–11)

## CONCLUSIONS OF LAW

### A. *Standard of Review.*

1. The defendants have filed their dispositive motions as motions to dismiss, or in the alternative, motions for summary judgment. The appropriate standard for ruling on these motions depends upon whether this Court considers matters outside the pleadings. *Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256, 1266 n. 11 (11th Cir.1997).

2. Under Rule 12(b) of the Federal Rules of Civil Procedure, whether a plaintiff fails to state a claim upon which relief can be granted must be ascertained from the face of the complaint. A motion to dismiss should be granted " 'when the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *United States v. Pemco Aeroplex, Inc.,* 166 F.3d 1311, 1313 (11th Cir.1999) (citations omitted).

3. If this Court considers matters outside the complaint, the 12(b)(6) motion converts into a motion for summary judgment. *Garcia,* 104 F.3d at 1266 n. 11. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The burden on the moving party may be discharged by " ' "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case.' " *Riley v. Newton,* 94 F.3d 632, 638 (11th Cir.1996) (quoting *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)), *cert.*

*denied,* 519 U.S. 1114, 117 S.Ct. 955, 136 L.Ed.2d 842 (1997).

4. In this case, the Court has considered matters outside the pleadings, specifically affidavits and other exhibits attached to the motions, and therefore, the defendants' motions are most amenable to analysis under the summary judgment standard. Nonetheless, regardless of which standard is employed, plaintiffs' claims against the defendants must fail. Plaintiffs' claims based upon the defendants' alleged unlawful inclusion of the hurricane deductible fail on each of the following separate grounds: (1) the defendants complied with Alabama's insurance code for submitting and receiving approval of the hurricane deductible; (2) under the insurance code and Alabama case law, hurricane deductibles are lawful and enforceable; (3) the insurance commissioner has the exclusive authority to regulate the purported improper trade practices that plaintiffs allege and Alabama provides no private cause of action in this regard; and (4) plaintiffs' claims must first be presented to the insurance commissioner, etc., for consideration prior to initiating a class action lawsuit. Additionally, the Court finds that there is no genuine issue of material fact respecting plaintiffs' notice claim.

### B. *Claims Regarding the Approval of the Insurance Deductible.*

5. The defendants complied with the Alabama legislature's exclusive method for submitting and receiving approval of insurance rates and rating systems, including the language of the hurricane deductible. The legislature has created a department of insurance and has provided for a commissioner of insurance ("commissioner"), who shall be selected with special reference to his training and experience and who shall be appointed by the Governor. Ala.Code §§ 27–2–1, 27–2–2.

6. The commissioner has those specific powers and duties provided in the insurance code and "such additional powers and duties as may be provided by other laws of this state." Ala.Code § 27–2–7. Included within those powers and duties is the pow-

er and duty to regulate and approve rates and rating systems, Ala.Code § 27–13–2 ("The commissioner is charged with the duty of the administration of all laws now relating, or hereafter relating, to insurance rates and rating systems of all companies authorized to do business in the state of Alabama, with the exception of rates of life and health and accident business and rates of title insurance."); *see also* Ala.Code § 27–13–3 ("The commissioner shall have authority to require any insurer engaged in any of the businesses in Alabama . . . to file with the department any data or information to be filed in such manner and on such forms as may be prescribed by said commissioner."), and to approve or disapprove insurance policy forms, Ala.Code § 27–14–8(a) ("No basic insurance policy or annuity contract form or application form where written application is required and is to be made a part of the policy, or contract, or printed rider, or endorsement form or form of renewal certificate shall be delivered or issued for delivery in this state unless the form has been filed with, and approved by, the commissioner."). The legislature has given the commissioner the authority to disapprove forms for a number of reasons, including the ground that a proposed form "[c]ontains provisions which are unfair, or inequitable or contrary to the public policy of this state or which would, because such provisions are unclear or deceptively worded, encourage misrepresentation." Ala.Code § 27–14–9(5). Finally, the legislature has vested the commissioner with the discretion to determine whether a particular rate or rating system, which includes the forms upon which the rates are based, is adequate and non-discriminatory. Ala.Code § 27–13–30.

If, after examination thereof, the commissioner shall find that such rating systems filed by, or on behalf of, an insurer provide for, result in or produce rates that are unreasonably high or excessive, or are unfairly discriminatory between risks in this state involving essentially the same hazards, he shall issue an or-

der to such insurer, or to the rating organization of which such insurer is a member or subscriber, directing that such rating systems be altered in the manner, and to the extent, stated in such order to produce rates that are reasonable and adequate and not unfairly discriminatory. If the commissioner shall find that such rating systems provide for, result in or produce rates that are not unreasonably high, are not inadequate for the safeness and soundness of the insurer and are not unfairly discriminatory between risks in this state involving essentially the same hazards, he shall approve such rating systems, and such approval shall continue in effect until he shall, by order, direct that such rating systems be changed or modified as in this section provided.

*Id.*

■ 7. This Court concludes that the undisputed evidence in this case establishes that the defendants complied with the statutory requirements established by the legislature for approving the change in their homeowners policies made by the hurricane deductible endorsements. Similarly, this Court concludes that the undisputed evidence establishes that the defendants' hurricane deductible endorsements and the applicable rates with respect to the homeowners policies to which those endorsements would be applied were filed and approved by the commissioner. (*See* Doc. 9, Amended Complaint, ¶ 24; Doc. 27, Exhibits A & B; Doc. 3, Exhibits B, 1 & 2)

■ 8. Even apart from the statutory compliance in this case, plaintiffs have cited no law prohibiting the defendants from submitting, or the commissioner from approving, the hurricane deductible. The insurance code contains no admonitions in applying a homeowners insurance deductible based on a percentage. Unlike other categories of insurance, such as uninsured motorist coverage, the legislature has specifically abstained from regulating homeowners insurance comprehensively.[2] Courts determine the validity of insurance contract provisions, including those which exclude or limit coverage, by comparing them with the insurance code. *See Ex parte O'Hare*, 432 So.2d 1300, 1302–1303 (Ala.1983) (enforcing uninsured motor vehicle exclusion which was consistent with the Alabama Uninsured Motorist Act); *Higgins v. Nationwide Mut. Ins. Co.*, 291 Ala. 462, 467, 282 So.2d 301, 303 & 305–306 (Ala.1973) (exclusion of government-owned vehicles from the class of uninsured motor vehicles held invalid where it conflicted with the Alabama Uninsured Motorist Act); *Salviejo v. State Farm Fire & Cas. Co.*, 87 Hawai'i 430, 431, 958 P.2d 552, 553 (Ct.App.1998) (court held that a household exclusion in a homeowners insurance policy was valid, even though similar exclusions in automobile insurance policies have been invalidated, because, by contrast to automobile insurance statutes, there was no statute governing homeowners insurance which conflicted with the exclusion); *Allstate Ins. Co. v. Schmitt*, 238 N.J.Super. 619, 629, 570 A.2d 488, 492 (N.J.Super.Ct.App.Div.) (criminal acts exclusion in homeowners policy enforced because it did not conflict with any statute or public policy), *cert. denied*, 122 N.J. 395, 585 A.2d 394 (N.J.1990). Moreover, Alabama courts have repeatedly determined that, in the absence of statutory provisions or public policy to the contrary, insurance compa-

---

**2.** The Alabama Legislature has yet to follow Florida's example in establishing a comprehensive statutory policy for hurricane deductibles. Section 627.701(2) of Florida's Statutes Annotated explicitly allows a property insurer to issue an insurance policy or contract covering real property which contains a hurricane deductible as a percentage rather than a specific amount of money, if the department of insurance determines that the deductible is clear and unambiguous. In-

deed, the express public policy of Florida endorses the inclusion of such deductibles:

> It is the intent of the Legislature to encourage the use of higher hurricane deductibles as a means of increasing the effective capacity of the hurricane insurance market in this state and as a means of limiting the impact of rapidly changing hurricane insurance premiums.

Fla.Stat.Ann. § 627.701(5)(a) (West 1998).

nies have the same rights as individuals to limit their liability or impose conditions upon coverage. *Altiere v. Blue Cross & Blue Shield of Alabama*, 551 So.2d 290, 292 (Ala.1989); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Goodman*, 279 Ala. 538, 540, 188 So.2d 268, 270 (Ala.1966); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Cain*, 421 So.2d 1281, 1283 (Ala.Civ.App. 1982); *see Liggans R.V. Center v. John Deere Ins. Co.*, 575 So.2d 567, 569 & 571 (Ala.1991); *Ex parte O'Hare, supra*, 432 So.2d at 1303 ("Insurance Companies may by appropriate exclusions and exclusionary definitions protect themselves through a valid contract."). Because the hurricane deductible at issue here is consistent with the insurance code and is neither contrary to statutory provisions nor public policy, the defendants did nothing wrong by petitioning the commissioner for the deductible and, once it was approved, applying the deductible in the designated coastal counties.

9. This Court finds that not only are there no statutory impediments to applying a hurricane deductible based on a percentage, but Alabama case law, similar to other jurisdictions, supports the imposition of hurricane deductibles in insurance contracts. *Compare Delaney's Inc. v. Illinois Union Ins. Co.*, 894 F.2d 1300, 1302–1303 (11th Cir.1990) (referring to deductible applicable to coverage for damage resulting from Hurricane Elena) and *Koch v. State Farm Fire & Cas. Co.*, 565 So.2d 226, 228 (Ala.1990) (referring to application of deductible to coverage for water damage sustained from Hurricanes Frederic and Elena) *with Western Fire Ins. Co. v. Copeland*, 786 F.2d 649, 650 (5th Cir.1986) (referring to application of deductible to coverage for windstorm damage resulting from Hurricane Frederic); *State Farm Fire & Cas. Co. v. Patrick*, 647 So.2d 983 (Fla.Dist.Ct.App.1994) (property damaged by Hurricane Andrew was insured for replacement cost, less deductible); *Gregory v. Continental Ins. Co.*, 575 So.2d 534, 535–536 (Miss.1990) (buildings damaged by Hurricane Elena were insured for replacement costs, less a deductible). These

cases clearly demonstrate that it is the accepted practice for insurers to include a deductible in insurance policies covering hurricane damage.

10. Hurricane deductibles, whether based on a percentage or a specified dollar amount, are consistent with the insurance code and Alabama case law. Plaintiffs can produce no authority to support their assertion that such deductibles are either unlawful or improper. All of plaintiffs' allegations, with the exception of the inadequate notice claim, are premised upon the defendants' alleged unlawful inclusion of a hurricane deductible in their insurance policies. Since, as described above, the hurricane deductible is lawful and enforceable, all of the plaintiffs' allegations premised upon the unlawfulness of the hurricane deductible must fail as a matter of law.

▪ 11. This Court finds that plaintiffs' claims against the defendants are also due to be dismissed on exclusive or primary jurisdiction grounds.

The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *see also Fraternal Order of Police v. Entrekin*, 294 Ala. 201, 210, 314

So.2d 663, 671 (Ala.1975). It is clear, therefore, that a plaintiff must exhaust administrative remedies when an agency has exclusive jurisdiction over an issue.

12. The Alabama insurance code grants the commissioner extensive powers in regulating the insurance industry. In reference to the commissioner's powers and duties, the code provides that the commissioner shall:

(4) Have the powers and authority expressly conferred upon him by, or reasonably implied from, the provisions of this title;

\*    \*    \*    \*    \*    \*

(6) Conduct such examinations and investigations of insurance matters, in addition to examinations and investigations expressly authorized, as he may deem proper to determine whether any person has violated any provision of this title or to secure information useful in the lawful administration of any such provision . . . .;

(7) Invoke any legal, equitable or special remedy for the enforcement of orders or the provisions of this title[.]

Ala.Code § 27–2–7.

■ 13. The insurance code requires the commissioner to approve policy forms and endorsements, *see* Ala.Code § 27–14–8(a) ("No basic insurance policy or annuity contract form or application form where written application is required and is to be made a part of the policy, or contract, or printed rider, or endorsement form or form of renewal certificate shall be delivered or issued for delivery in this state unless the form has been filed with, and approved by, the commissioner."), and this Court finds that a deductible would certainly be considered a form filing to be reviewed and approved by the commission-

er. *See State Farm Mut. Auto. Ins. Co. v. Department of the Public Advocate,* 118 N.J. 336, 356–357, 571 A.2d 957, 967 (1990) (after noting that certain forms filings, such as deductibles, should be regarded as effecting a rate change, holding that a mixed question of fact and law was presented concerning the effect of a forms filing and its inclusion within a Rate Counsel's compensation statute, and that "the Department of Insurance is best equipped to make this determination"). The code also sets forth the criteria the commissioner must follow before disapproving such a filed form. For example, the commissioner may disapprove a form if it violates the insurance code or if it is unfair or contrary to public policy. Ala.Code § 27–14–9.

14. Expressly included in the commissioner's general supervisory powers is the power to hold hearings to decide issues pertaining to the insurance industry.

(a) The commissioner may hold hearings for any purpose within the scope of this title deemed by him to be necessary.

(b) The commissioner shall hold a hearing if required by any provision, or upon written demand therefor by a person aggrieved by any act, threatened act or failure of the commissioner to act or by any report, rule, regulation or order of the commissioner, other than an order for the holding of a hearing or an order on hearing or pursuant thereto. Any such demand shall specify the grounds to be relied upon as a basis for the relief to be demanded at the hearing, and unless postponed by mutual consent, the hearing shall be held within 30 days after receipt by the commissioner of demand therefor.

Ala.Code § 27–2–28;[3] *see also* Procedural Rules Governing Administrative Hearings,

---

**3.** While § 27–2–28 of the Alabama Code does not set forth the procedure for obtaining a hearing if an insurance company refuses to reduce its rate, *see* Ala.Code § 27–2–28(d) ("This section does not apply to hearings provided for in Chapter 13 of this title."), § 27–13–32 of the Alabama Code does provide such mechanism.

Every rating organization, and every insurer which does its own rate-making, shall provide reasonable means within this state, to be approved by the department, whereby any person, or persons, affected by rate made by it may be heard on an application to reduce such rate. If such rating organization or such insurer shall refuse to reduce

Regulation No. 65 (Department of Insurance 1998). An appeal may be taken from any order entered by the commissioner, pursuant to § 27–2–32(a) ("An appeal from the commissioner shall be taken only from an order on hearing ...."), as a matter of right to the Circuit Court of Montgomery County, Alabama, Ala.Code § 27–2–32(b); *cf.* Ala.Code § 27–13–43 (appeals from commissioner's orders on violations of rating articles are to be to the Circuit Court of Montgomery County, Alabama on a writ of certiorari).

15. In sum, the legislature, through the insurance code, has specifically provided that forms filings, such as the hurricane deductible at issue here, are subject to review and approval by the commissioner—not by some other entity and not by a court—and further, has provided a specific procedure for addressing grievances if a party is aggrieved by an act of the commissioner (*e.g.,* approving the hurricane deductible)—i.e., making a written demand to the commissioner for a hearing specifying the grounds for relief. In the instant case, plaintiffs have not alleged that they followed this procedure.

■ 16. Based on the commissioner's expansive powers under the insurance code, the Court finds that plaintiffs' claims regarding the percentage deductible fall within the jurisdiction of the insurance department and the commissioner. Consequently, plaintiffs must exhaust their administrative remedies before the insurance department. Only after the commissioner has ruled or refused to hold a hearing on the issue may the plaintiffs seek court intervention. *See* Ala.Code § 27–2–32(a) & (b).

■ 17. Plaintiffs' claims are also subject to dismissal under the doctrine of primary jurisdiction. *See, e.g., Jones Truck Lines, Inc. v. Price Rubber Corp.,* 182 B.R. 901, 911 (M.D.Ala.1995) (under this doctrine, "the court may retain jurisdiction, or it may dismiss the case without prejudice.... The court also has the option of staying the proceedings, retaining jurisdiction and referring the matter to the agency for an administrative ruling."); *Entrekin, supra,* 294 Ala. at 214, 314 So.2d at 675 (dismissing plaintiffs' class action on the basis of the primary jurisdiction of the City of Cullman's Personnel Board).

■ 18. In *Entrekin,* the Alabama Supreme Court recognized the need for the agency to make factual determinations, including determinations regarding its own policies and procedures. *See id.* at 214, 314 So.2d 663. Based on the agency's primary jurisdiction and the plaintiffs' failure to seek relief from the agency, the court dismissed the plaintiffs' complaint. *See id.* at 212, 314 So.2d at 673 (noting that "[t]he doctrine of primary jurisdiction implies that matters entrusted by the legislature to an administrative agency, ought

---

such rate, the person or persons affected thereby may make a like application to the commissioner within 30 days after receipt of notice in writing that the application for reduction of rate has been denied by such rating organization or by such insurer. If, upon the expiration of 20 days after application for the reduction of a rate, such rating organization or such insurer fails to grant or reject the application, the person, or persons, affected may make the application to the commissioner in the same manner as if the application had been rejected by such rating organization or by such insurer. The commissioner shall fix a time and a place for hearing on such application, upon not less than 10 days' notice by registered or certified mail, for the applicant and such rating organization or such insurer to be heard. The commissioner shall make such order as he shall deem just and lawful upon the evidence placed before him at such hearing.
*Id.*

Based upon the manner in which the defendants have addressed this issue, the Court determines that the defendants will not change the subject hurricane deductible, even if asked to, so that the only recourse for plaintiffs will in fact be to the commissioner by written demand for a hearing. In other words, to the extent § 27–13–32 has any application in this case at hand, the defendants have specifically waived any requirement that the plaintiffs must first file all application with them seeking a reduction in rates before going to the commissioner with this complaint.

first be considered by that agency. Thus when a controversy arises as to how an agency is conducting its affairs, a demand for corrective action first should be made to that agency[.]"); *see also Mobile County Bd. of Health v. McNeill,* 350 So.2d 303, 307–308 (Ala.1977) (Alabama Supreme Court held that the issue of whether plaintiff could install a septic tank must first be decided by the Mobile County Board of Health because the issue "lies within the specialized knowledge and expertise of the Board of Health").

19. Here, as in *Entrekin,* plaintiffs' claims should be dismissed because the plaintiffs have failed to seek corrective action from the insurance commissioner. As noted above, the insurance code sets forth the procedure for taking such corrective action, that is, by making a written demand for a hearing specifying the reasons why plaintiffs are entitled to relief in connection with the hurricane deductible. Ala.Code § 27–2–28. Plaintiffs' claims depend on an ultimate finding that the percentage deductible is unfairly discriminatory. This type of determination is within the commissioner's extensive authority. In addition, this determination requires familiarity with the insurance industry and the variety of factors analyzed in deciding a deductible—matters within the commissioner's expertise. The commissioner should have the opportunity to review the appropriateness of the percentage deductible. Therefore, the plaintiffs should follow the procedure for review required by the insurance code and first seek relief from the insurance department and the insurance commissioner.

20. "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper,* 507 U.S. 258, 269, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993) (citations omitted). Plaintiff have made no showing that their unexhausted remedies under Alabama's insurance code are unavailable or would be futile. Accordingly,

this lawsuit is premature and must be dismissed.

■ 21. Plaintiffs' claims also fail based on the filed-rate doctrine. Specifically, because plaintiffs' complaint, as amended, alleges that the defendants' percentage deductible was approved by the commissioner, plaintiffs' judicial challenge to the percentage deductible is barred by the filed-rate doctrine.

■ 22. The filed-rate doctrine prohibits collateral challenges to rates set by a regulatory agency thereby preserving the authority of such agency over determinations of the reasonableness of rates and insuring that entities charge only those rates that the agency has approved. *See generally American Tel. & Tel. Co. v. Central Office Tel., Inc.,* 524 U.S. 214, ——, 118 S.Ct. 1956, 1963, 141 L.Ed.2d 222 (1998) (Under the filed-rate doctrine "even if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff."). "Simply stated, the doctrine holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings...." *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 18 (2nd Cir.1994); *see also id.* ("The filed rate doctrine bars suits against regulated utilities grounded on the allegation that the rates charged by the utility are unreasonable."). Two companion principles lie at the core of the filed-rate doctrine: first, that legislative bodies design agencies for the specific purpose of setting rates; and second, that courts are not institutionally well-suited to engage in retroactive rate setting. *See id.* at 19.

23. The filed-rate doctrine " 'prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue.' " *Calico Trailer Mfg. Co. v. Insurance Co. of North America,* 155 F.3d 976, 977 (8th Cir.1998) (citation

omitted). The doctrine is designed to insulate from challenge the filed rate deemed reasonable by the regulatory agency. *Wegoland,* 27 F.3d at 20. The principle underlying this doctrine is that state agencies, such as the Alabama department of insurance, are "deeply familiar with the workings of the regulated industry and utilize this special expertise in evaluating the reasonableness of rates." *Id.* at 21.[4]

24. The United States Supreme Court has ruled that the filed-rate doctrine forbids a state court from calculating damages in "a breach-of-contract action based on an assumption that had a higher rate been filed," the Federal Energy Regulatory Commission would have approved it. *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 584, 101 S.Ct. 2925, 2928 & 2933–2934, 69 L.Ed.2d 856 (1981). Additionally, courts, including the Eleventh Circuit, have uniformly held that the rationales underlying the filed-rate doctrine to federal agencies apply equally to regulation by state agencies. *Wegoland,* 27 F.3d at 20–21; *Taffet v. Southern Co.,* 967 F.2d 1483, 1494 (11th Cir.) (en banc) (the rationale underlying the filed rate doctrine applies "whether the rate at issue has been set by a state rate-making authority or a federal one."), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992); *H.J. Inc. v. Northwestern Bell Tel. Co.,* 954 F.2d 485, 494 (8th Cir.) ("[T]he rationale underlying the filed rate doctrine applies whether the rate in question is approved by a federal or state agency."), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992). Moreover, the Eleventh Circuit has held that the filed-rate doctrine applies even where the regulated entity allegedly defrauded the administrative agency to obtain approval of the filed rate. *Taffet,* 967 F.2d at 1494–1495 ("A regulated entity's alleged fraud does not create a right to a reasonable rate that exists independently of agency action. Thus, even if the filed rate is obtained through fraud, it remains true that one does not suffer the [RICO] predicate 'injury to business or property' by paying the filed rate.").

25. At least one court has construed the filed-rate doctrine to include challenges to insurance rates that have been previously approved by a state insurance commissioner. In *Calico Trailer Mfg. Co. v. Insurance Co. of North America,* 1994 WL 823554, at *6 (E.D.Ark. October 12, 1994), the district court, relying on the filed-rate doctrine, dismissed claims based on allegations of excessive workers' compensation insurance premiums because to rule otherwise "would disturb the Insurance Commissioner's rate-making decision." The essence of the plaintiff's complaint in *Calico* was that it had to pay rates that were inflated as a result of a conspiracy among the defendants. *See id.* The district court noted that "an attack on rates previously approved by the Insurance Commissioner pursuant to his statutory authority is a damage concept that falls squarely within the filed rate doctrine." *Id.* After noting that the plaintiff was provided a statutory remedy in which to contest the allegedly improper rates, and that any decision by the court in plaintiff's favor would disturb the commissioner's authority, the court found that plaintiff's challenge to the rates approved by the commissioner was barred by the filed-rate doctrine. *Id.* On appeal, the plaintiff, Calico, conceded that the filed-rate doctrine applied "to workers' compensation insurance rates filed and approved by the Commissioner for Arkansas employers in the assigned risk pool." *Calico, supra,* 155 F.3d at 977. The Eighth Circuit determined, however, that it need not consider

---

4. In *Wegoland,* the Second Circuit noted that:
[Regulating agencies] employ their peculiar expertise to consider the whole picture regarding the reasonableness of a proposed rate. They make hundreds if not thousands of discretionary decisions about the submitted costs and ultimately arrive at the approved filed rate. Courts are simply ill-suited to systematically second guess the [regulatory agencies'] decisions and overlay their own resolution.
*Id.* at 21.

the applicability of the doctrine in light of "Calico's failure to exhaust administrative remedies made available to workers' compensation insureds under Arkansas law." *Id.*

26. The same regulatory schemes supporting the filed-rate doctrine in other cases exist within Alabama's insurance code. In Alabama, the regulation of insurance rates, rating systems and policy forms is purely a legislative function. The Alabama legislature has created the department of insurance and has provided that the commissioner is to regulate and approve rates, rating systems and policy forms filed by insurance companies. As discussed fully above, it is the commissioner, based on his training and experience, who determines whether a particular rate or rating system filed by an insurance company for use with a particular form is unreasonably high, excessive or unfairly discriminatory, and whether the forms submitted comply with the laws and public policy of the state.

27. This Court finds that it is undisputed that the defendants' rates, rating systems and the hurricane deductible were filed with and approved by the commissioner. (Complaint, ¶ 24)[5] Allowing the plaintiffs to circumvent the established statutory process for approval of insurance rates by allowing the Court to become enmeshed in the rate-making process would undermine Alabama's current regulatory regime, which, through its statutory administrative remedies, is designed to be self-policing. If this Court strikes the hurricane deductible, thereby increasing coverage under the policies, that necessarily affects a decrease in the defendants' effective rates and disturbs the commissioner's rate-making authority. Therefore, pursuant to the filed-rate doctrine, this Court concludes that plaintiffs' claims challenging the unlawfulness of the defendants' rate filing, which include the hurricane deductible, are due to be dismissed.

28. The Court finds the cases relied upon by the plaintiffs in this regard to be distinguishable. In *Ex parte Blue Cross & Blue Shield of Alabama,* 582 So.2d 469 (Ala.1991), the Alabama Supreme Court found that the plaintiffs were not required to exhaust their administrative remedies because they were not challenging the actual rate approved by the insurance department but were claiming that the defendant had charged rates in excess of the amount approved by the department. *Id.* at 483 ("[T]his action is not a rate case. In this action, plaintiffs contend that the Commissioner has acted in setting the appropriate rates, by approving the contingency reserve plan, and that Blue Cross has charged rates in excess of the amount that has been approved by the Commissioner in the contingency reserve plan. Plaintiffs also seek a refund for the amount determined to have been an excessive charge by Blue Cross."). Additionally, in *McCullar v. Universal Underwriters Life Ins. Co.,* 687 So.2d 156 (Ala.1996), the court rejected the opinion of an employee of the insurance department in an affidavit offering an interpretation of a statute which the court found conflicted with the clear meaning of a provision in the insurance code. *See id.* at 164 ("[W]e hold that the State Insurance Department's interpretation of its Regulation 28, as enforced by the State Banking Department via that

---

**5.** The commissioner-approved deductible which the plaintiffs challenge here is clearly the equivalent of a rate. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Department of the Public Advocate,* 118 N.J. 336, 356, 571 A.2d 957, 967 (1990) (noting that, as to some forms filings, "an insurer can well assert that not only are they not submitted in order to gain approval to change rates, they may, in fact, result in no change in rates.... On the other hand it is equally true that some prescribed filings should be so regarded. For

example, changes in deductibles would usually have the effect of raising rates."); *Liberty Mut. Fire Ins. Co. v. Commissioner of Ins.,* 340 Mass. 413, 415, 164 N.E.2d 908, 909–910 (Mass.1960) (because rates on windstorm coverage had increased due to hurricanes in New England, company sought $100 deductible coverage as alternative to New England Fire Insurance Rating Association's $50 deductible coverage, both of which were treated as "rates" that were filed with the insurance commissioner).

Department's Rule 4(a), is inconsistent with the plain meaning of § 5–19–20(a).") Because those cases involved violation of either a statute (*McCullar*) or the application of a rate beyond that approved by the commissioner (*Blue Cross*), they are not rate cases because the plaintiffs did not attack actual approval of the commissioner. *See* 582 So.2d at 483 ("[T]his action is not a rate case."). In the case before the Court, plaintiffs attack the approval of the deductible by the commissioner and therefore, this challenge falls within the filed-rate doctrine and must be addressed at least in the first instance by the commissioner. This case might have been different if, as in *Blue Cross*, the defendants had applied a rate beyond that approved by the commissioner, or if, as in *McCullar*, this case involved statutory construction. However, as aforesaid, unlike the *Blue Cross* plaintiffs, plaintiffs' claims here amount to a direct attack on the precise application of a deductible specifically approved by the commissioner, and, further, unlike *McCullar*, statutory construction is not at issue. The commissioner has the expertise in the area of setting insurance rates, including the hurricane deductible at issue here, and the commissioner's judgment on this issue should not be overridden by a court.

■ 29. In the alternative, those claims based on the alleged unlawfulness of the hurricane deductible must fail because no private right of action exists to assert the purported improper trade practices that are the subject of the plaintiffs' complaint.

30. This Court finds the gravamen of plaintiffs' lawsuit to be that the defendants acted in concert and combined their efforts to threaten the commissioner not to offer homeowners' insurance coverage in the coastal counties of Alabama unless the commissioner allowed defendants to include a percentage-based hurricane deductible. (Complaint, ¶ 24) Furthermore, plaintiffs allege that as a result of defendants' threats, a forced "arrangement" was then effectuated between defendants and the commissioner. (*Id.*) Similarly, plaintiffs allege that the defendants conspired and "acted in concert to restrain trade by contract, agreement or otherwise, for their own benefit in violation of Alabama law and to the detriment of the plaintiff class." (Complaint, ¶¶ 40 & 44)

31. The Alabama Trade Practices Law establishes for the business of insurance a scheme of comprehensive rules, regulations, and penalties to regulate the purported improper trade practices that plaintiffs allege. Ala.Code § 27–12–1, *et. seq.* The Alabama Code specifically, provides the following:

> No person shall enter into any agreement to commit or, by any concerted action, commit any act of boycott, coercion or intimidation resulting in, or tending to result in, unreasonable restraint of, or monopoly in, the business of insurance.

Ala.Code § 27–12–8.

32. The Trade Practices Law does not provide for a private cause of action, however. *Farlow v. Union Central Life Ins. Co.*, 874 F.2d 791, 795 (11th Cir.1989). ("[N]o section of the Trade Practices Law creates a private cause of action."). That law delegates its enforcement to the insurance commissioner by specifically granting the commissioner several remedies and establishing the procedures for pursuing such remedies. *Id.* (citations omitted). The "establishment of these specific administrative procedures and enforcement provisions implies that the Alabama legislature intended to make such remedies exclusive." *Id.* (citations omitted).[6]

---

6. Because the Alabama Trade Practices Law follows the model unfair practice legislation, the *Farlow* court examined other states' interpretations of their trade practices laws which mirrored the model act. *Id.* at 796; *see* Ala. Code § 27–12–1 (purpose is to regulate trade practices in accordance with the intent of Congress as expressed in the Insurance Regulation Act). After conducting such an examination, the Eleventh Circuit concluded that nearly every state which has enacted legislation patterned after the model unfair practice legislation has refused to imply a private cause of action. *Farlow*, 874 F.2d at 796.

33. Section 27–12–21(a) provides that the commissioner is vested with the authority to restrain unfair methods of competition in the business of insurance:

> Whenever the commissioner has reason to believe that any person engaged in the business of insurance is engaging in this state in any method of competition, or in any act or practice in the conduct of such business which is not defined in this trade practices law, that such method of competition is unfair or that such act or practice is unfair or deceptive and that a proceeding by him in respect thereto would be to the interest of the public, he may issue and serve such person a statement of the charges in that respect and a notice of a hearing thereon to be held at a time and place fixed in the notice, which shall not be less than 10 days after the date of the service thereof.

34. This Court finds that by virtue of these provisions, the commissioner has the exclusive authority for asserting the claims which plaintiffs allege in this action regarding the lawfulness of the hurricane deductible. If the commissioner had reason to believe that the defendants had combined their efforts and threatened him to the extent that he was forced into an arrangement resulting in unfair insurance trade practices, he had (and still has) the authority to institute proceedings to thwart said practices. However, it is undisputed that the commissioner has at no time exercised that authority. Therefore, because the commissioner has failed to initiate proceedings against the defendants and because the Trade Practices Law fails to create a private cause of action for the claims asserted by the plaintiffs, this Court concludes that plaintiffs' claims must fail as a matter of law.

### C. *Plaintiffs' Notice Claim.*

35. The Court finds that there is no genuine issue of material fact on plaintiffs' notice claim and that the defendants are entitled to judgment on that claim. In count four of the amended complaint, plaintiffs allege that the defendants failed to give adequate notice of the change brought about by the hurricane deductible.

36. In renewing an insurance policy, the burden is on the insurer to notify the insured if the renewal policy differs from the original policy. *Woodlawn Fraternal Lodge No. 525 v. Commercial Union Ins. Co.,* 510 So.2d 162, 164 (Ala.1987) (citations omitted); *see also Alliance Ins. Co. v. Reynolds,* 494 So.2d 609, 613 (Ala.1986). However, unlike other states, such as Florida, Alabama does not require a particular form for renewal of an insurance policy. Instead, such notice simply must be specific, complete, not misleading, and call to the insured's attention any reductions in the scope of policy coverage. *See Giles v. St. Paul Fire & Marine Ins. Co.,* 405 F.Supp. 719, 724–725 (N.D.Ala.1975); *Alliance Ins. Co.,* 494 So.2d at 612–613.

37. This Court finds that the undisputed evidence clearly establishes that both State Farm and Allstate provided complete, clear, and informative notice of the hurricane deductible endorsement and the applicable rates with respect to the homeowners' policies to which that endorsement would be applied. There is no evidence in the record that plaintiffs did not receive such notice.

38. Approximately ten days prior to the mailing of the renewal billing package, State Farm sent a pre-renewal letter to its Alabama homeowners which informed them of the changes in their policies, including the introduction of the "new Hurricane Deductibles[,]" (Doc. 27, Exhibit A, Terry Affidavit, at ¶ 5 & Exhibit 1) and forty-five days prior to the date of renewal, the company issued the renewal billings for the existing policyholders (Terry affidavit, at ¶ 4). Included within the renewal billing was the approved hurricane deductible endorsement, an insert discussing the rate changes and the hurricane deductible program, and a renewal certificate itemizing both the applicable premiums using the new rates and the hurricane endorse-

ment form number and percentage applicable to the homeowner's policy. (*Id.*, at ¶ 4 & Exhibit 2) Moreover, for renewal business, a notice was printed on the hurricane deductible endorsement form entitled "Important Notice," printed in red, highlighting the addition of the deductible to the policy, and providing in pertinent part:

> Important Notice ... Concerning Your Hurricane Deductibles
>
> The following endorsement describes the new hurricane deductibles that now applies to your policy. Higher hurricane deductibles reduce the premium you'd otherwise pay. However, it also means the portion of each covered hurricane loss for which you are responsible increases. The hurricane deductibles do not affect your deductible for all other perils.
>
> The Declarations Page of your policy shows your new hurricane deductibles. Other deductible options may be available. If you have any questions, please contact your State Farm agent.
>
> This Policy Endorsement is effective on the renewal date of your policy. Please read it carefully and keep it with your policy.

(Doc. 27, Exhibit 2)

39. Allstate mailed a notice concerning the deductible change to each of its insureds forty-five (45) days prior to their policy renewals, along with the endorsement setting forth the change. (Rowland Affidavit, ¶ 8 & Exhibits 1 & 2) Allstate's stand-alone notice of the change was clearly labeled "Important Notice," and it specifically stated, **"We've Made a Change to Your Allstate Property Insurance Policy[.]"**

(Rowland Affidavit, Exhibit 1)

> Due to the significant risk of loss caused by windstorm, we are implementing a Hurricane Deductible, which will take effect with the renewal of your policy. The amount of your Hurricane Deductible is shown on the endorsed Policy Declarations.

Pursuant to the enclosed Hurricane Deductible Endorsement, which amends your policy, the Hurricane Deductible shown on the enclosed Policy Declarations will apply in the event of a covered loss caused by "windstorm" or by any object(s) driven by "windstorm" during the time period specified in the Hurricane Deductible Endorsement. For purposes of this deductible, "windstorm" is defined as "wind, hail, rain, snow, or sleet caused by or resulting from a hurricane, a tropical storm, or a tornado originating from a hurricane or a tropical storm." For the definitions of "hurricane" and "tropical storm," as well as other definitions and more information about how and when this Hurricane Deductible applies, please refer to the enclosed endorsement.

We will pay for a covered "windstorm" loss only when the amount of that loss exceeds the Hurricane Deductible shown on your Policy Declarations (subject to policy terms and conditions). We will then only pay for the amount that exceeds the deductible amount.

If you have any questions about the Hurricane Deductible, or if you would like to inquire about any deductible options available to you, please contact your Allstate agent.

(*Id.*)

40. This Court concludes that State Farm's "Important Notice" printed on the page with the approved hurricane deductible endorsement, the renewal certificate, and the insert discussing policy changes, and Allstate's stand-alone notice of change labeled "Important Notice," and renewal information, including the deductible endorsement and the renewal declarations page, were complete, specific, and informed their insureds how the hurricane deductible would affect their coverage under the policy. Accordingly, this Court concludes that both defendants are entitled to summary judgment on the notice claim.

## CONCLUSION

Based upon the foregoing reasons, the defendants' motions to dismiss and/or for summary judgment are due to be granted. The plaintiffs' complaint, as amended, is hereby dismissed without prejudice so that plaintiffs can pursue their claims, if any, through the Alabama department of insurance's administrative procedures.